## THE STATE v. ORMISTON ET AL.

1. **Criminal Law:** CONSPIRACY TO INJURE PERSON AND CHARACTER: INDICTMENT EXAMINED.  The indictment in this case for a conspiracy to injure the person and character of another examined, (see opinion,) and *held* sufficient to charge the offense under § 4087 of the Code.

2. ——: ——: INDICTMENT: CHARGING OVERT ACT: DUPLICITY. While the crime of conspiracy is complete without the commission of the overt act which the conspirators have agreed to commit, yet, where the overt act is committed, the conspiracy must be deemed to continue during its commission, and in such case the overt act may be charged in the indictment for conspiracy in aggravation of the offense, without making the indictment bad for duplicity.  See authorities cited.  *State v. Ridley*, 48 Iowa, 370, and *State v. Kennedy*, 63 Id., 197, distinguished. REED, J., *dissenting*.

3. ——: ——: ——: ALLEGATION OF MEANS TO BE USED.  Where the alleged object of a conspiracy is the doing of an act which is criminal, though it be only a misdemeanor, it is not necessary to allege the means with which it was to be done.  *State v. Potter*, 28 Iowa, 554, distinguished.

4. ——: EVIDENCE: NO ERROR FOUND.  Several questions arising upon the admission and exclusion of evidence examined, (see opinion,) and no reversible error found.

5. ——: PRACTICE: AID TO DISTRICT ATTORNEY.  A defendant in a criminal case cannot complain because the district attorney calls to his aid other counsel.

6. ——: EVIDENCE OF GOOD MORAL CHARACTER: EFFECT OF.  Evidence of good moral character upon the part of the defendant does not have the effect to rebut evidence of the commission of the crime by him, except inferentially.  Such evidence should not be considered by the jury as tending to show that the defendant did not commit the crime charged, but only that a man of such character would not be likely to commit it.

7. **Evidence:** IMPEACHMENT OF WITNESS: JURY MUST DETERMINE. Every witness is presumed in the outset to be truthful.  If impeaching evidence is introduced, and evidence in rebuttal of the impeaching evidence, the jury must consider whether they still believe the witness to be a truthful person, and thus determine whether or not he has been successfully impeached.

8. **Practice in Supreme Court:** ERROR WITHOUT PREJUDICE: NO REVERSAL.  An instruction which favors the appellant, though erroneous, is no ground of reversal on his appeal.

| 66 | 143 |
| 81 | 623 |
| 66 | 143 |
| 83 | 116 |
| 66 | 43 |
| 85 | 369 |
| 66 | 143 |
| 86 | 221 |
| 66 | 143 |
| 87 | 308 |
| 66 | 143 |
| 89 | 116 |
| 90 | 536 |
| 66 | 143 |
| 95 | 384 |
| 66 | 143 |
| 96 | 306 |
| 66 | 143 |
| 105 | 45 |
| 66 | 143 |
| f108 | 69 |
| 108 | 74 |
| 66 | 143 |
| 112 | 464 |
| 66 | 143 |
| 118 | 4 |
| 66 | 143 |
| 122 | 128 |
| 123 | 526 |
| 66 | 143 |
| 132 | 422 |
| 133 | 481 |

The State v. Ormiston et al.

9. **Instructions**: MUST FOLLOW THE EVIDENCE. An instruction asked, though abstractly correct, is properly refused when not warranted by the evidence.

10. **Criminal Law**: CONSPIRACY TO INJURE THE PERSON: INDICTMENT AND PROOF: TARRING AND FEATHERING. Where the indictment charged a conspiracy to commit a great bodily injury, but it also charged, in the language of the statute, that the defendants "maliciously conspired together with intent wrongfully to injure the person," etc., proof of a conspiracy to tar and feather was sufficient to sustain this charge.

11. **Juror**: CHALLENGE TO: UNQUALIFIED OPINION. A juror cannot be said to have formed an unqualified opinion who states that the opinion which he has formed is based upon hearsay, and not upon statements made by any one claiming to have personal knowledge, and that he still thinks that he can render a true verdict.

*Appeal from Poweshiek District Court.*

FRIDAY, APRIL 24.

THE indictment in the case charged that " Calvin Ormiston, David Ormiston and Charles Bramer did wickedly and maliciously conspire together with intent wrongfully to injure the person and character of one Charles Blanchard, and to assault the said Charles Blanchard, with the felonious intent to inflict upon him a great bodily injury, in violation of law; and in pursuance of said conspiring together said defendants did, in the night-time, feloniously decoy said Charles Blanchard away from his home and family, and into the public highway, and did then and there feloniously assault, ill-treat and tar and feather the. said Charles Blanchard." Upon this indictment the defendants were convicted, and sentenced to confinement in the penitentiary for three months. They appeal.

*Winslow & Varnum*, for appellants.

*Smith McPherson, Attorney-general*, for the State.

ADAMS, J.—I. After verdict, the defendants moved in arrest of judgment on the ground that "the indictment

The State v. Ormiston et al.

**1. CRIMINAL law: conspiracy to injure person and character: indictment examined.** charges no offense, and is bad for duplicity." The indictment, we assume, was drawn under section 4087 of the Code. That section is in these words: " If any two or more persons conspire or confederate together, with the fraudulent or malicious intent wrongfully to injure the person, character, business, or property of another, * * * every such offender shall be punished by imprisonment," etc. As to the position that the indictment does not charge any offense, the defendants, by their counsel, in their argument say: " It is an impossibility to agree and intend to commit an assault with the intent to inflict great bodily injury. No person can intend to have an intent. Again, the statute does not punish a conspiracy with an intent to intend something, even if such a thing could be." This criticism, we suppose, is made with reference to so much of the indictment as charges a conspiracy " to assault the said Charles Blanchard, with the felonious intent to inflict upon him a great bodily injury." To the criticism we think that two sufficient answers may be made. We do not think that there was any design to charge the defendants with intending to have an intent. The allegation that the defendants conspired to assault Blanchard, with intent to inflict a great bodily injury, means, by any fair construction, to charge them with conspiring to assault him, and to inflict a great bodily injury. In the second place, if it were true that the words referred to charge no offense, they should be treated merely as surplusage. The offense is sufficiently charged in the use of other words. The indictment charges that the defendants " did conspire, with intent wrongfully to injure the person and character of Blanchard." In this the indictment followed the statute substantially, and if the portion criticised is meaningless, it did not have the effect to vitiate the indictment. *Larned v. Com.*, 12 Metc., 240; *Lohman v. People*, 1 N. Y., Comst., 379.

Another objection, however, is urged, which is of a different character. It is said that the indictment is bad for duplicity.

The State v. Ormiston et al.

2. ——: ——: *indictment: charging overt act: duplicity.* The defendants' theory is that, if the indictment charges a conspiracy at all, it charges two offenses, to-wit, a conspiracy to injure the person of Blanchard, and the actual commission of the injury. It is not to be denied, we think, that the indictment charges a conspiracy, and the overt act which the defendants conspired to commit. The court below, however, did not regard the indictment as charging two offenses, nor a compound offense, but simply a conspiracy; and so instructed the jury. Its instruction on this point is in these words: "Under the indictment and evidence in this case you are limited to the inquiry as to whether said defendants, or some two or more of them, did conspire or confederate together," etc. Not only was the indictment not demurred to on the ground that it charged two offenses, but it appears affirmatively that the case was tried and submitted upon the theory that the indictment charged only conspiracy. The offense of conspiracy may, it is true, be complete without the commission of the overt act which the conspirators agreed to commit. *Com. v. Judd*, 2 Mass., 329; *Com. v. Warren*, 6 Id., 74; *State v. Buchanan*, 5 Har. & J., 317; *State v. Noyes*, 25 Vt., 415. It would seem to follow that, though the overt act may have been committed, it is unnecessary to charge it, unless the indictment is drawn under a statute which requires that it should be charged.

In 2 Bish. Crim. Law, § 203, the author says: "In conspiracy the indictment usually sets out the matter aggravating the offense: yet the offense exists without this matter, and, strictly, it need not be stated in the indictment, though some authorities hold otherwise." On this point we observe that in 3 Greenl. Ev., § 95, the learned author seems to regard the rule as different from what Bishop does. He says: "If the conspiracy was carried out to the full accomplishment of its object, it is necessary to state what was done, and the persons who were thereby injured." In *State v. Mayberry*, 48 Me., 218, it was held that if the conspirators carry out the object of the conspiracy, that fact may be alleged in aggravation

of the offense; and given in evidence to prove the conspiracy. Though the offense of conspiracy, even where the overt act is committed, is complete before the commission of the overt act, in the sense that nothing more is necessary to constitute the crime, yet the conspiracy must be deemed to continue during the commission of the overt act. *Com. v. Corlies*, 3 Brewst., (Pa.,) 575. The conclusion which we reach is that, where the overt act is charged, it does not follow necessarily that the indictment was designed to charge anything more than conspiracy. If it should be so drawn as to show a design to claim a conviction for the injury committed, though the evidence should fail to sustain the charge of conspiracy, such indictment manifestly could not be sustained, unless the offense could be regarded as a compound offense.

In *State v. Ridley*, 48 Iowa, 370, the defendants were charged with burglary, with intent to commit larceny, and with the commission of the larceny intended. The indictment was construed by the court below as charging the offense of burglary, and the offense of larceny, and the court instructed the jury that they might convict of either offense, as the evidence should warrant. Burglary and larceny not being a compound offense, it appeared to this court that the defendants were, under the indictment, tried at one time for two offenses, and that the demurrer to the indictment should have been sustained. But that case differs from this. The burglary did not continue during the larceny, so as to make the act of larceny identical with the act of burglary. The act of burglary was necessarily completed before the act of larceny began. In the case at bar, the conspiracy continued and embraced the overt act, and, while we do not say that the defendants might not have been convicted and punished under separate indictments, both for the conspiracy and the injury committed, we do not think that the indictment in this case was drawn with the view of securing a conviction for two offenses, or of allowing the jury to convict for the injury if they failed to find a conspiracy. We think that we are justified in saying this in

view of the peculiar character of the offense, and in view of the doctrine which has prevailed in regard to indictments drawn with the design of charging this offense.

We are not able to cite any ruling of this court which we can say is precisely in point; but we think the ruling which we now make is sustained in a general way by *State v. Hayden*, 45 Iowa, 11, and *State v. Shaffer*, 59 Id., 290. It seems to us, indeed, that the present case is a stronger one in favor of the indictment than either of those. The defendant relies upon *State v. Kennedy*, 63 Iowa, 197. The indictment in that case was held bad for duplicity. But in that case there was a charge of burning insured goods, and that charge was not made simply as an overt act of the conspiracy. The agreement was to remove the goods and burn the building. The indictment, then, appears to charge the doing of something outside of the conspiracy. Mr. Justice REED, in the opinion, referring to the allegation in respect to burning the insured goods, says: " These allegations are all distinct from the charge of conspiracy." And, again, he says: " The offense charged by the allegations is entirely distinct from any of the offenses which it is alleged, in the part of the indictment charging the conspiracy, was the object of the conspiracy." It is manifest that, if the indictment charged a crime not contemplated by the conspiracy, the indictment was bad for duplicity. Possibly, some language used in the course of the opinion might seem to afford some support to the defendants' position; but it will be seen that there is an essential difference between that case and this.

Another objection urged is that the indictment does not set out the means which the defendant intended to employ. It was held in *State v. Potter*, 28 Iowa, 554, that where the intended act is not criminal, the indictment should charge with what means the act was to be done. But in the case at bar the intended act was criminal. The conspiracy alleged was to wrongfully injure the person of Blanchard. It is true that to wrongfully injure

3. ——: ——: alle-
gation of
means to be
used.

the person of another is not necessarily more than a misdemeanor, but it is at least that; and in our opinion an indictment which charges a conspiracy to commit such injury need not charge the means by which it was to be done.

II.   The evidence shows that during the assault the persons who were engaged in making it charged Blanchard with

4. ———: evidence: no error found. having been too intimate with the school-mistress. The defendants sought to show by Blanchard himself that, when so charged, he did not deny it.   The counsel for the state then asked him why he did not·deny it, and he was allowed to answer, against the defendants' objection, that he did not consider that it made any difference to them.   The admission of this evidence is assigned as error.   The fact that Blanchard did not deny the charge was wholly immaterial. It did not have the slightest tendency to exculpate the persons engaged in the assault.   It was not their province to demand a confession or denial.   Nor did the failure to deny the charge have any tendency to impair the credibility of Blanchard's testimony.   It follows that the explanation given by way of supposed rebuttal was without prejudice, as there was nothing to rebut.

III.   The counsel for the state, while examining Blanchard as a witness, asked a question in these words:   "What was

THE SAME. said, if anything, about castrating you?"   This was objected to upon the ground that it was re-examination, incompetent and immaterial, leading and calling for the opinion of the witness.   The court overruled the objection, and the witness answered:   "Why, they said, when they first took hold of me, that that was what they were going to do."   We are not able to see that the question was objectionable.

IV.   One Carter was examined as a witness in behalf of the state, and testified in these words:   " On May 28, 1883,

THE SAME. I lived in Scott township, about a quarter of a mile from Cal. Ormiston's.   I saw him that day at the barn-yard gate at my place.   Charles W. Kirk was hauling

cream, and I let him out at the road. Cal. Ormiston halted, and we passed the time of day, and he asked me if I did not want some fun. He said that he and some others had some notion of tarring Charles Blanchard that night, and he wanted to know if I would not assist. I told him no." On cross-examination the defendants asked him a question in these words: "What had you ever done, or what transaction did you ever have, that would lead him to believe that you would go in to commit a crime?" This question was, upon objection by the state, disallowed, and the defendants assign the ruling as error. No reason is given why such a question should be allowed, and we are not able to discover any.

V. Many objections were interposed to the admission of evidence, which we cannot specifically notice without unduly

THE SAME.

extending the opinion. We must be allowed to say that we have examined them all, and do not find that they are well taken. Some evidence objected to could by no possibility have been prejudicial. Other evidence was objected to as being admitted out of place; but this is largely a matter of discretion with the trial court. The evidence does not appear to us to have been especially important, nor to have been introduced out of place by any plan to secure an advantage by so doing; nor are we able to see that the defendants were denied the right of rebuttal.

VI. The defendants complain that the district attorney was assisted by another attorney, without any showing on the

5. ——: practice : aid to district attorney.

part of the district attorney that he was incompetent. The district attorney requested the assistance, and the court allowed it. In this we do not think that there is anything of which the defendants can properly complain. They are entitled to a trial according to the law, and only that.

VII. The defendants relied, to some extent, upon evidence

6. ——: evidence of good moral character: effect of.

of good character to raise a reasonable doubt of guilt in the minds of the jury. On this point they asked an instruction in these words: "Good

character of the accused, if it has been shown, is an element which should be considered by you, and given its proper weight. This alone may be sufficient to raise a reasonable doubt, even in cases where, if this were not shown, the evidence would otherwise warrant and demand a conviction. If, in this case, the good character of the defendants has been shown, and it raises such doubt in your minds, you should acquit." The court refused the instruction as asked, and instructed as follows: "Before you can convict the defendants, or either of them, you must be satisfied of their guilt from the evidence, beyond a reasonable doubt;" and also, " if you find good character established by the evidence, you should consider it, and allow it such weight as you believe it fairly entitled to as tending to show that men of such character would not be likely to commit the crime charged in the case." The refusal to instruct as asked, and the giving of the instruction above set out, are assigned as error.

That part of the instruction given which is more especially objected to is that in which the jury was instructed that they might consider good character, as " tending to show that men with such character would not be likely to commit the crime charged." It is said that " the true rule is that it should be considered as tending to show that they did not commit it." In our opinion the objection is not well taken. It is true, the jury might consider the evidence of the defendants' good character as tending to show that they did not commit the crime, but the jury could not, upon the evidence of good character, reach the conclusion that the defendants did not commit the crime, or reach a reasonable doubt upon the point, except upon the ground expressed by the court. Evidence of good character does not have the effect to rebut evidence of the commission of crime, except inferentially. We see no error in the instruction given, and it appears to us that it sub-stantially covers the one asked.

VIII. An attempt was made by the defendants to impeach the character of two witnesses for the state, William Carter

**7. EVIDENCE: impeachment of witness: jury must determine.** and Willard Welch. Upon the evidence the court gave an instruction as follows: "Evidence has been introduced tending to show that the general reputation for truth and veracity of the witnesses Carter and Welch, in the neighborhood in which they live, is bad. You should consider and weigh this evidence, and allow it such weight as you believe it fairly entitled to, and determine from it whether such witnesses, or either of them, have been successfully impeached." It is said, in criticism of this instruction, that there is not " any fixed boundary line which marks and distinguishes the successfully impeached witness from one upon whom the attempt had been made and failed." But it appears to us that the distinction is not only recognizable, but one which the jury is bound to recognize. Every witness is presumed in the outset to be truthful. If impeaching evidence is introduced, and evidence in rebuttal of the impeaching evidence, the jury must consider whether they still believe the witness to be a truthful person, and the belief of each juryman in this respect will determine whether, in his judgment, the witness has been successfully impeached or not.

IX. Upon the subject of impeachment the court gave another instruction, as follows: " If you believe, from the **8. PRACTICE in supreme court: error without prejudice: no reversal.** evidence, that any witness has been successfully impeached, either by reason of bad reputation for truth and veracity, or by reason of statements made out of court conflicting with statements made on the witness stand, or you so find that any witness has willfully sworn falsely in regard to any matter or thing material to the issues in the case, you will be justified in disregarding the whole testimony of such witness, except in so far as you may find it corroborated by other credible evidence in the case, or by facts and circumstances proved on the trial." The defendants complain of this instruction. They say, " an impeached witness may be believed without corroboration;" and cite *Greene v. Cochran*, 43 Iowa, 544. But why the defendants

should urge such an objection we are wholly unable to com-
prehend.   In making such objection, they seem to be arguing
in support of the testimony of Carter and Welch.   There
was no attempt to impeach any other witness, and Carter
and Welch were witnesses for the state, and their testimony
was wholly against the defendants.   But they say that the
court assumed that there was corroborating evidence, when,
in fact, there was not.   Welch testified to being present when
the conspirators assembled and prepared to carry out the
object of the conspiracy.   He gave their names, and among
them those of the defendants, Calvin Ormiston and David
Ormiston, and testified as follows:   " While they were there
(at Calvin Ormiston's barn) they disguised themselves.   They
put soot on their faces, and said they were going to tar and
feather Charley Blanchard.   They got the tar and feathers
ready.   They turned their coats wrong side out, and some of
them their caps and pants.   I did not see the feathers; I saw
a sack they were in.   I saw the tar in a can."

No other witness testified as to what transpired at the time
and place; but there was other evidence that the defendants
were engaged in the conspiracy.   The testimony of Patrick
Welch tended to show that Calvin Ormiston planned the con-
spiracy, and that David Ormiston admitted afterwards that he
was in it.   As to Charles Bramer, it is undisputed that he was
the one who went to Blanchard's house that evening, and
induced him to go where he was met by the other conspira-
tors, and where the tarring and feathering took place.   There
was evidence, then, aside from that of Willard Welch, tending
to show that the Ormistons and others must have assembled
somewhere as conspirators, and this evidence, we think, must
be regarded as corroborative of the testimony of Willard
Welch.   This is enough to sustain the instruction.

X.   The defendants asked the court to instruct as follows:

9. INSTRUC-
TIONS: must
follow the
evidence.

" If you find the facts to be that one of the defend-
ants intended to assault and tar and feather Blanch-
ard, and the others merely aided and abetted him

in such act, without any agreement or understanding previously entered into by them for that purpose, then you will acquit." The court refused to so instruct, and the defendants assign the refusal as error. The undisputed evidence shows that Blanchard was waylaid upon a public highway in the night-time, and tarred and feathered by a company consisting of about nine men, more or less armed, and more or less disguised. It would have been absurd for the court to instruct the jury that they might find that the tarring and feathering was done without any previous understanding among the assailants.

XI. The defendants asked an instruction as follows: " Under the indictment, proof that the defendants, or two or more of them, before the alleged assault upon Blanchard, agreed or combined to tar and feather him, and in pursuance of such agreement or combination did tar and feather him, is not sufficient to justify a conviction, and if this is all that has been established by the evidence you will acquit." The court refused to instruct as asked, and the refusal is assigned as error. This instruction, as we understand, was asked upon the theory that the conspiracy charged in the indictment was a conspiracy to assault with intent to inflict great bodily injury, and that to tar and feather a person is not to inflict a great bodily injury. But in our opinion the defendants were not entitled to such instruction. It is true, the indictment did charge a conspiracy to assault with intent to inflict a great bodily injury, but it also charged, in the language of the statute, that the defendants " maliciously conspired together with intent wrongfully to injure the person," etc. Proof of a conspiracy to tar and feather would, in our opinion, be sufficient to sustain this charge. But the court having, possibly, some doubt upon this point, and considering that there was evidence of a conspiracy to assault with intent to inflict a great bodily injury, went so far in favor of the defendants as to charge the jury that, under the indictment and evidence,

*10. CRIMINAL law: conspiracy to injure the person: indictment and proof: tarring and feathering.*

the inquiry of the jury should be limited to the question as to whether two or more of the defendants conspired to injure Blanchard by assaulting, with intent to inflict a great bodily injury. Still, the defendants are not satisfied. They contend that the instruction is erroneous, for the reason that there was no evidence of such intent. But in our opinion there was such evidence. Blanchard testified that his assailants said at first that they were going to castrate him, and it is shown, also, that one of them called for a knife, and also that they were armed with one or more revolvers.

XII. It remains to be stated that one of the jurors was challenged for cause, and the challenge overruled. The defendants insist that their challenge was well taken. The juror stated in substance that he heard rumors concerning the tarring and feathering of Blanchard and the persons engaged in it, and had formed an opinion that the defendants were the persons. But upon further examination he stated that he could not say whether the parties who told him were posted or not; that it was hearsay; that he did not hear what he did hear from any of the persons claiming to be witnesses, or to have personal knowledge of the case; and that he thought that he could hear the evidence impartially, and render a true verdict. The statutory ground relied upon in support of the challange is that the juror had formed an unqualified opinion. Code, 2772. But we cannot say that a juror has formed an unqualified opinion who states that the opinion which he has formed is based upon hearsay, and not upon statements made by any one claiming to have personal knowledge, and that he still thinks that he can render a true verdict.

We see no error in any of the rulings of the court, and the judgment must be

AFFIRMED.

REED, J., *dissenting.*—In my opinion the indictment is bad for duplicity. It charges the defendants with assault

with intent to inflict a great bodily injury, as distinctly and certainly as it charges them with conspiracy, and under it they could have been convicted of that crime.