UNITED STATES v. PATTERSON et al.

(Circuit Court, D. Massachusetts. June 1, 1893.)

No. 1,215.

1. INDICTMENT—DEMURRER—SURPLUSAGE.
 Surplusage in an indictment cannot be reached by demurrer of any character; but, if it be assumed that a special demurrer will lie, it must point out the specific language objected to, and not require counsel and the court to search through the indictment for what is claimed as demurrable.

2. SAME—CONSPIRACY TO MONOPOLIZE INTERSTATE COMMERCE—ACT JULY 2, 1890.
 An indictment for conspiracy to monopolize interstate commerce in cash registers need not negative the ownership of patents by defendants, or aver that the commerce proposed to be carried on is a lawful one.

3. SAME—AVERMENTS.
 It is unnecessary to set out in detail the operations supposed to constitute interstate commerce, and in this respect it is sufficient to use the language of the statute.

4. SAME.
 It is unnecessary to allege the existence of a commerce which defendants conspire to monopolize, as the statute does not distinguish between strangling a commerce which has been born, and preventing the birth of a commerce which does not exist.

5. SAME.
 The indictment need not show that the purpose of the conspiracy was to grasp the commerce into the hands of one of the defendants, or that defendants were interested in behalf of the party for whose benefit they conspired, or what were their relations to such party.

At Law. Indictment of John H. Patterson and others for conspiracy to monopolize interstate commerce in cash registers, in violation of the act of July 2, 1890.

Elihu Root and F. D. Allen, for the United States.
H. W. Chaplin, for defendants.

PUTNAM, Circuit Judge. This case was heard on general demurrer, February 28, 1893, during the October term, 1892. 55 Fed. 605. The demurrer was overruled as to counts 4, 9, 14, and 18, and as to all other counts the demurrer was sustained, and the counts quashed, and the defendants were given leave to file special demurrers to the counts sustained; and, March 7, 1893, a so-called special

demurrer was filed, within the time allowed therefor. This was brought to the attention of the court, and heard during the same term, May 6, 1893.

In the opinion handed down February 28th, the following occurred:

"The allegations of what was done in pursuance of the alleged conspiracy are, under this particular statute, irrelevant."

Again:

"That the means [intending the means by which the market was to be engrossed or monopolized] are alleged with reasonable precision in the remaining counts appears from the practical application of the rules of pleading appropriate to this case made in U. S. v. Waddell, 112 U. S. 76, 5 Sup. Ct. 35. Some of the allegations in each count may be insufficient, but these are only surplusage."

Notwithstanding this surplusage, there was sufficient in each of the four counts which the court sustained to render them valid; and the surplusage is largely of such a character that it is entirely disconnected from the essential allegations, and may be disregarded at the trial. The pleadings, however, are very voluminous, and there may be difficulty in sifting out the insufficient allegations, especially those touching the "means" referred to, from those which are sufficient, and in determining what is thus to be regarded as surplusage; and, as to this, there may prove to be at the trial differences of opinion between the counsel for the United States, the counsel for defendants, and the court. As the indictment runs against many parties, scattered through several states, at remote distances from each other and from the place of trial, and as its subject-matter is complex, and involves a great number of transactions, it appeared to the court that the trial, at the best, would be burdensome and expensive, both for the United States and the accused, and that on this account it was important to minimize this by settling in advance, if it could be done, what should be held to be surplusage. The court was well aware that what are ordinarily spoken of as special demurrers find their origin in the statutes 27 Eliz. and 4 & 5 Anne, and have been held to be limited to procedings in the nature of civil suits; but it had in thought that, independently of these special demurrers by statute, there was at common law a special demurrer lying against surplusage, which reached also indictments and criminal informations. Such the court understands to be the statement of the law in Chit. Pl. (7th Eng. Ed.) 253. The court had no intention that the questions which had been fully raised and carefully argued under the general demurrer should again be brought to its attention, and no other intention than that of assisting in simplifying the course of the trial as above explained. The court is, however, now forced to the conclusion that surplusage in indictments cannot be reached by demurrer of any character. Such is positively laid down as the law in Steph. Pl. (3d Amer. Ed.) 365; Heard, Crim. Pl. 140, 271; and is also stated by Lord Cranworth in Mulcahy v. Reg., L. R. 3 H. L. 306, 329. If, however, the law is otherwise, and surplusage and irrelevant matter in indictments may be

made the subject of a special or limited demurrer, what has been filed by the defendants in this case, under leave granted February 28th, would be insufficient, because it is expressed in general terms, and requires the counsel for the United States and the court to search through the indictment for what is claimed to be demurrable, when, by all the rules of pleading, it ought to set out the specific language objected to, and ask the ruling of the court on that alone. The reason touching this proposition stated in Story, Eq. Pl. § 457, applies everywhere. Clearly is this so in this case, because this so-called special demurrer is expressly to the entire 4th, 9th, 14th, and 18th counts.

It seemed to the court that there must be some way by which, as a matter of right, parties brought in on a complex and voluminous indictment may have settled in advance of the trial what portions of it, if any, are surplusage. It has been frequently said—certainly with reference to civil proceedings—that surplusage might be rejected on summary motion, and the pleadings left to stand as though it had been struck out or never inserted. Gould, Pl. (4th Ed.) c. 3, § 170; Chit. Pl. (7th Eng. Ed.) 252; and many other authorities. It also has been understood that in criminal cases it might be disposed of to a certain extent by a nolle prosequi, and that this would apply to a separable part of any one count, as well as to the whole of a count, or to an entire indictment. Bish. Crim. Proc. (3d Ed.) § 1391. The general expressions, however, of the opinion in Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781, are sufficient to cause this court to proceed no further with these suggestions, unless the subject of them is formally brought to its attention and counsel are duly heard.

On the whole, therefore, the court is compelled to conclude that the permission which it gave to defendants to file a special demurrer was perhaps inadvertent, and certainly has proved ineffectual for the purposes which the court had in mind. The counsel for the defendants, however, have availed themselves of this permission to reargue several of the propositions submitted at the hearing on the general demurrer, apparently insisting that they were overlooked by the court, because not noticed in its opinion passed down February 28th; and they also present at least one additional proposition. Many points were raised on demurrer by counsel for the defense, some of them of great importance, and some of a minor character; so that a full exposition of the views of the court touching every question which was presented, would have resulted in an opinion too lengthy to be excusable as coming from a tribunal for whose errors there is ample remedy by appeal. Therefore the court touched in its opinion only the salient features of the case. Under the present circumstances, however, the court feels called on to notice briefly some of the points which have been pressed anew on its consideration.

The claim that the indictment should negative the ownership of patents by the defendants, and also set out that the commerce carried on, or proposed to be carried on, by the National Cash-Register

Company, was a lawful one, and perhaps some other matters of that character, proceeds on the hypothesis that its allegations should be certain to every intent,—a rule which applies only to pleas in abatement. All such are matters of defense, not to be anticipated by the prosecutor.

The claims that these counts left it for the prosecutor, and not for the court, to decide whether they state subject-matters of interstate commerce, and also that it is necessary that they should set out in detail the operations supposed to constitute interstate commerce, are not maintainable, because, so far as this feature of the indictment is concerned, it is clearly sufficient, according to numerous decisions of the supreme court, which need not be cited, to use the language of the statute. The suggestion of the court, in the opinion passed down February 28th, that the statute is not one of a class where it is sufficient to declare in the words of the enactment, related to the particular proposition then under consideration.

As to all the propositions touching the existence of commerce in cash registers, or knowledge, or want of allegation of knowledge, on the part of the accused, it is sufficient to say that those counts which do allege the existence of such commerce also allege positively knowledge on the part of the defendants; and those which do not allege such existence are sufficient, because neither the letter of the statute nor its purpose distinguishes between strangling a commerce which has been born and preventing the birth of a commerce which does not exist. On this point, also, in the opinion of the court, it is sufficient to use the language of the statute.

Much of what is said by the defendants about judicial knowledge touching cash registers and patents has no application to common-law proceedings, especially on the criminal side of the court, and the court will not take time to enlarge upon this.

The suggestion that no count alleges an intent to injure or defraud the public by raising the price, or otherwise, relates to indictments of an entirely different character from this at bar, and to conspiracies which are illegal in their essence, without reference to the means adopted to accomplish their purposes.

As to the proposition that the National Cash-Register Company is not alleged to have been a party to the conspiracy, the court went, in this direction, to the extreme limit which the letter of the law would permit. It sustained only those counts which alleged a combination for the purpose of engrossing, monopolizing, or grasping the trade in question, and rejected all those counts which alleged only an intention to destroy certain competitors named. Beyond that the court purposely left its opinion in an indefinite form, because neither the letter of the statute nor the philosophy of pleading conspiracies require that it should appear that the purpose was to engross, monopolize, or grasp into the hands of one of the persons indicted, or that the defendants were interested in behalf of the party for whose benefit they combined to monopolize, engross, or grasp, or, indeed, what their relations were to that party. Even if the statute should finally be held to be limited to combinations to engross, monopolize, or grasp in behalf of some party to the

combination, yet there remains the well-known rule of law that it is unnecessary to indict all the persons involved in a conspiracy. Of course, the court would have felt less doubt in meeting this objection if it had been alleged that the corporation named was a party to the conspiracy, or if the relations of the accused to it, or some other matter of a kindred character, had been set out. It may be that, when the proofs are developed at the trial, some unforeseen difficulty will arise, which need not now be anticipated; but, on the whole, the court concluded that this objection was not well taken.

In order that the defendants' exceptions may be undoubtedly saved at this term, the general demurrer having been overruled at the last, and that the defendants may be able to show to the appellate court specifically the points taken on demurrer in this court, I conclude to regard the so-called "special demurrer," in connection with the motion filed March 17, 1893, as a petition for a rehearing, and the clerk will enter the following order:

Leave to the defendants to file special demurrer granted February 28, 1893, annulled as inadvertent. Petition of defendants for rehearing on general demurrer granted. Order overruling demurrer as to counts 4, 9, 14, and 18, entered February 28, 1893, annulled. Matters set out in the so-called "special demurrer" are, by leave of court, assigned as additional causes for demurrer under the general demurrer. Counsel for the defendants and for the United States heard anew touching demurrer to counts 4, 9, 14, and 18. Demurrer overruled as to those counts; defendants to answer over, as provided by statute.