UNITED STATES v. PACIFIC & A. RY. & NAV. CO. et al.

(First Division.   Juneau.   September 9, 1913.)

No. 837B.

1. MONOPOLIES (§ 31*)—CONSPIRACY IN RESTRAINT OF TRADE—INDICTMENT.

Where an indictment charges that defendants conspired to restrain trade and commerce on a certain major route, it is sufficient charge of conspiracy to restrain trade and commerce on a certain minor route, being a part of the major route.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 20; Dec. Dig. § 31.*]

2. CONSPIRACY (§ 43*)—INDICTMENT.

Where an indictment charges a conspiracy to commit and also alleges the accomplishment of the object, the allegation of the successful execution of the object of the alleged conspiracy may be treated either as an allegation that the partnership in crime continues to exist, or it may be treated as matter in aggravation, or it may be wholly rejected as surplusage.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84-99; Dec. Dig. § 43.*]

3. CONSPIRACY (§ 43*)—TIME—INDICTMENT AND INFORMATION.

In an indictment for conspiracy, it is not necessary to fix the exact day or time when the conspiracy was formed. It is sufficient if it be alleged to have been formed prior to the date of the indictment.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84-99; Dec. Dig. § 43.*]

4. MONOPOLIES (§ 31*)—INDICTMENT—CONSPIRACY.

An indictment which charges a general plan of conspiracy in restraint of trade, the specific acts by which it was carried out,

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

and further that those specific acts were planned and executed by the individual codefendants, acting as the officers of the corporation defendants, is good as against demurrer.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 20; Dec. Dig. § 31.*]

In this case there are as defendants several corporations and several individuals. A separate demurrer to each count in the indictment has been filed by each defendant, but the only question before the court now is whether or not the demurrer to counts 1 and 2 should be sustained.

Each demurrer assigns 16 grounds, and so much of the 16 grounds as defendants have urged in argument and brief falls under the following contentions of defendants, viz.: First, that the counts are, and each of them is, bad for duplicity because each count charges more than one offense and is vague, indefinite, and uncertain; second, each individual defendant contends that no specific facts are charged against him, and that, because it is not stated whether he is charged in his individual capacity or as an officer and agent of a corporation (and, if the latter, of what corporation), he does not know what the government will claim, and so is unable to prepare his defense; third, that, if any offense is charged in count 1, the same offense is charged in count 2.

I will consider these propositions in their numerical order, applying them first to count 1 and then to count 2.

John Rustgard, Dist. Atty., of Juneau, and Roy V. Nye, Asst., Dist. Atty., of Ketchikan, for the United States.

Bogle, Graves, Merritt & Bogle and Farrell, Kane & Stratton, all of Seattle, Wash., Shackleford & Bayless, of Juneau, Ballinger, Battle, Hulbert & Shorts, of Seattle, Wash., Gunnison & Robertson, Winn & Burton, of Juneau, and Ira Bronson, of Seattle, Wash., for defendants.

### Count No. 1.

JENKINS, District Judge. Is it duplicitous or vague, indefinite, and uncertain? It is objected that there are here charged: (a) A conspiracy engaged in continuously for the

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

past ten years for the purpose of creating a monopoly in all of the defendants of the business of transportation between the southern ports and Yukon river points; (b) a conspiracy, engaged in at all times within the past three years, for the creation of a monopoly in the three steamship companies, alone, of the transportation business between the southern ports and Skagway; (c) a conspiracy to create a monopoly, the creation of a monopoly, and an attempt to create a monopoly.

The count says, at the beginning, that the defendants—

"did wrongfully, unlawfully, knowingly and willfully engage in a combination and conspiracy in restraint of trade and commerce by then and there combining and conspiring with one another to eliminate from and destroy competition in the business of transporting passengers and freight between the various ports in the United States and British Columbia in the south, and the various cities, communities, and settlements in the valleys of the Yukon river and of its tributaries both in British and American territory in the north, by way of Lynn Canal, and intermediate points, on a line of traffic hereinafter to be described, for the purpose and with the intent of monopolizing such trade and commerce in manner and form and by the means hereinafter set out."

While we have not yet got to the body or vitals of the indictment, we have nevertheless learned enough to know what the pleader means to charge, to wit, A conspiracy in restraint of trade to be effectuated by defendants monopolizing transportation on this entire route. Then follows a recital of the incorporations of the companies and of the fact that the route from southern ports to Yukon ports is composed of three constituent factors, viz.: From Yukon to Skagway; Wharfage at Skagway; from Skagway to southern ports— and of the fact that the railroad already had monopoly from Skagway north, and that the Wharf Company already had monopoly of wharfage at Skagway.

This takes us in the reading of the indictment down to the beginning of the last paragraph on page 6. All between that point and the beginning of the last paragraph on page 10 is devoted entirely to a recital of the ways and means to be adopted for securing a monopoly of the transportation business on that portion of the said route which lies between Skag-

way and the southern ports. It is necessary to set forth this in the count, for the ultimate plan is alleged to be the elimination of competition in the transportation business on the entire route from southern ports to Yukon river ports, and, should the pleader have failed to charge that a monopoly of transportation between southern ports and Skagway was arranged for, he would have failed to describe a very important part of the ultimate plan of the alleged conspirators.

The monopoly of the wharf at Skagway, and of the railroad company from Skagway north, having been already accomplished, are stated as existing things in terms of the dictionary and not of the criminal law. They are recited only as foundation facts, and when the pleader has laid another foundation fact, to wit, the scheme adopted to secure monopoly of the line from Skagway south, he has done nothing but complete the description of the scheme for the restraint of trade on the entire route from the southern ports to the Yukon ports.

The pleader has proceeded to a statement of the means adopted to bring about the monopoly in this portion of the route, and to accomplish it the following things are alleged to have been done by the defendants: Exclusive through traffic agreement arranged and agreed upon, rates arranged and agreed on, discriminating wharfage arranged and agreed upon, excessive local charges, Skagway north, arranged and agreed upon.

Having alleged that this monopoly in the steamship companies from Skagway north was brought about by a combination and conspiracy between all the defendants, with the intent, purpose, and effect of eliminating competition from that portion of the major route, there has been described the three constituent portions which make up the scheme for eliminating competition in the transportation business throughout the entire route from southern ports to Yukon river ports, viz.: Railroad monopoly Skagway to Yukon; wharf monopoly at Skagway; Skagway to southern ports, monopoly in steamship companies to be brought about and brought about by the conspiracy between and actions of all the defendants.

And so the count is closed, by a reiteration of the statement that the defendants are guilty of engaging in a combination and conspiracy in restraint of trade and commerce. What trade? Why, evidently the trade between the southern ports and the Yukon ports on a line of traffic "hereinafter described," as set forth in the introductory part of the count. The conspiracy embraces transportation on the entire major route, because it embraces transportation on all its parts.

It is true that there is alleged a conspiracy to create a monopoly in the three steamship companies, of the transportation business between the southern ports and Skagway, but I think it is likewise true that this conspiracy is alleged only as a step, a means by which the crime of conspiracy by all the defendants in restraint of trade and commerce throughout the entire route was to be carried out. It seems to me that it is as if the pleader had said:

"Defendants conspired to restrain trade and commerce in a certain major route. In order to restrain the trade referred to, it was essential that a monopoly of transportation on a certain minor route should be created in certain of the conspirators, and so all the conspirators conspire to create this subsidiary monopoly."

Insomuch as, at all times within the past three years, defendants conspired that the three steamship companies should enjoy a monopoly of transportation between the southern ports and Skagway, they conspired in restraint of trade and commerce on the entire route. So much for the allegation that two conspiracies are charged.

It is contended that, because the court says that this subsidiary conspiracy actually resulted in monopolization, therefore two crimes are charged, to wit, conspiracy to monopolize and actual monopoly. I do not so understand the law.

What is the nature of a criminal conspiracy? It is a partnership in crime. At the common law the conspiracy itself (i. e., the partnership in crime) was the gist of the offense, and it was not necessary to allege or prove an overt act, and yet, if the overt act was alleged, it was treated as matter in aggravation or as surplusage.

4 A.R.—44

In 2 Bishop's New Criminal Procedure (8th Ed.) § 206, the author says:

"Such acts (overt acts) are, when the combining of the defendants in a common purpose has been shown, evidence, like their declarations, further establishing the conspiracy and illustrating its character. And, if the law gave to these acts no other effect, they should not be set out in the indictment, the province of which is to state facts, not evidence. But each overt act is likewise a renewal of the conspiracy; hence the pleader may lay it in the indictment if he chooses, and the prosecuting power has the election, at the trial, to prove the allegation or treat it as surplusage."

And in 2 McLain on Criminal Law, § 977, the author says:

"However, it is a recognized form of charging the crime to allege that defendants conspired to do a certain wrong and then set out the overt acts done in pursuance thereof, thus showing the unlawful act done or means used; and this is regarded as a sufficient charge of conspiring to do such unlawful act or use such unlawful means. But it is immaterial that the overt act as charged constituted an independent crime, even a crime of a higher grade than the conspiracy, for the charge in such form is not considered as a charge of the crime involved in the act done, but of the crime of conspiracy involved in the agreement to do the act. In such cases the allegation of the act done is to be regarded rather as a matter of aggravation than as matter of substance."

The Sherman Law (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]) does not change the common law in this respect.

"If, then, a conspiracy is indictable at common law before any overt act, likewise it must be indictable at common law at any time after the commission of an overt act, if the conspiracy agreement or confederation still exists. A conspiracy agreement to accomplish an unlawful object is, in its very nature, a continuing agreement between the conspirators, the duration of which will depend upon the nature of the object which they propose to accomplish. Considering the infinite variety of possible conspiracies, both as to plan and purpose, it is impossible to lay down any unvarying rule concerning the extent of their duration, other than to say that they continue until they are abandoned, or the object of the conspiracy is accomplished. So long as the parties contemplate further action, if necessary to the attainment of their ultimate object, the agreement or confederation still exists. This further action may consist alone in accepting the benefits of an agreement previously made." U. S. v. Swift et al. (D. C.) 186 Fed. 1002.

In United States v. Kissel, 218 U. S. 601, 31 Sup. Ct. 124, 54 L. Ed. 1168, Justice Holmes said:

"A conspiracy in restraint of trade is different from and more than a contract in restraint of trade. A conspiracy is constituted by an agreement, it is true, but it is the result of the agreement, rather than the agreement itself, just as a partnership, although constituted by a contract, is not the contract but is a result of it. The contract is instantaneous; the partnership may endure as one and the same partnership for years. A conspiracy is a partnership in criminal purposes. That as such it may have continuation in time is shown by the rule that an overt act of one partner may be the act of all, without any new agreement specifically directed to that act."

The language of the statute is:

"Every person who shall * * * engage in any such combination or conspiracy shall be deemed guilty of a misdemeanor."

Obviously it must be properly alleged that there is a conspiracy (that is, a partnership) in restrain of trade, and, to allege that properly, the acts done must be set forth so that the court may see the nature of the partnership and determine whether or not it is criminal.

An indictment saying that two defendants are guilty of engaging in a combination in restraint of trade and commerce, and yet states the commission by defendants of no act actually restraining or tending to restrain trade, obviously would be insufficient because that would be merely to state in the language of the statute, and "the words of the statute do not of themselves fully, directly, and clearly set forth all the elements necessary to constitute the offense intended to be punished." In re Greene (C. C.) 52 Fed. 104.

The question is: Is a charge of conspiracy necessarily duplicitous because the conspiracy is alleged to have accomplished its object?

State v. Grant, 86 Iowa, 216, 53 N. W. 122, was the case of an indictment for conspiracy, in which the overt act (itself a crime) was also alleged, and where an objection was made to the indictment for duplicity. The court said:

"It is said that the indictment is bad for duplicity; that it charges several offenses. This claim is not well founded. It is clear that only one offense is intended to be charged, and the trial was had upon that theory. True, it is not necessary to charge the commission of the overt act which was the ultimate object of the conspiracy. Com. v. Judd, 2 Mass. 329 [3 Am. Dec. 54]; Com. v.

Warren, 6 Mass. 74; State v. Buchanan, 5 Har. & J. (Md.) 317 [9 Am. Dec. 534]; State v. Noyes, 25 Vt. 415. But is has been held proper to charge the overt act in aggravation of the offense, as the conspiracy continues during its commission. 3 Greenl. Ev. § 95; State v. Mayberry, 48 Me. 218; 4 Amer. & Eng. Enc. Law, pp. 624, 625; 2 Whart. Crim. Law (8th Ed.) §§ 1382, 1383; State v. Ormiston, 66 Iowa, 146, 23 N. W. 370. The rule in cases where the indictment charges conspiracy to commit a crime, and also the overt act, is that it does not necessarily follow that the indictment was intended to charge more than a conspiracy. And this is especially true where, as in this case, the indictment does not show 'a design to claim a conviction for the injury committed, though the evidence should fail to sustain the charge of conspiracy.' It does not appear in this case that it was intended by alleging the overt act to put defendants on trial therefor, nor was such the result. Hence it is not vulnerable to the objection made as to duplicity. State v. Ormiston, 66 Iowa, 146, 23 N. W. 370."

See, also, Commonwealth v. Judd, 2 Mass. 329, 3 Am. Dec. 54; U. S. v. Gardner (C. C.) 42 Fed. 829; Commonwealth v. O'Brien, 66 Mass. (12 Cush.) 84.

I think that the allegation of the successful execution of the object of the alleged conspiracy may be treated either as an allegation that the partnership in crime continues to exist, or it may be treated as matter in aggravation, or it may be wholly rejected as surplusage. I fail to see where there is any charge or allegation of an attempt to monopolize.

·Defendants contend that a day and year should be named as the beginning of the conspiracy and brought down by a continuando to the day of the indictment. That may be a proper way, but it is not the only proper way, for, if it was, most criminal conspiracies would go unpunished. The allegation that the things were done "at all times within the last ten years, and therefore at all times within the last three years," is an allegation that they were done "at all times within the last three years," and that latter is but to say that "at a time three years ago and continuously until the finding of the indictment."

A conspiracy being a thing framed in the dark, and being continuing in its nature, the *precise* time of its formation can rarely be ascertained and is never necessary to be alleged. It is the "engaging in" the conspiracy; it is becoming members of "partnership in crime" which is the gist of the offense.

Witnesses are seldom invited to the conferences of conspirators, and conspirators, more often than not, keep the secret of the conspiracy. As was said in the MacAndrews Case:

"To show that an exact time may be, and therefore must be, assigned for the commission of the offense of combination, the defendants argue upon the meaning of the word 'engage,' as used in the statute, and strenuously urge, that, since the offense prohibited is that of 'engaging in' a combination, it must be complete, as soon as the accused employs his attention or effort in or about the same, that such employment of attention or effort is capable of precise assignment in point of time, and they challenge the prosecution to name the day. That statute is not directed against such an abstraction as this. It does not require, on the part of the prosecution, clairvoyance to discover or locate the offense. Its prohibition is not directed against a state of mind, but against a state of facts. The facts do not simultaneously occur; the events are not contemporaneous. It may, and naturally would require time for the working parts of the combination to become co-operative, or for the monopoly to become more than a hope; and what is forbidden and renders the actors obnoxious to the criminal law is not an undiscoverable thought or hope, but a perfectly obvious result or condition. The condition or state of facts against which the statute is directed is a continuing condition, and therefore the offense of creating and maintaining that condition is necessarily a continuing offense, and does not, from its very nature, require greater particularity in assignment than is used in this indictment." U. S. v. MacAndrews (C. C.) 149 Fed. 825.

Defendants contend that "every act charged to have been done by the defendants is an act required by the Interstate Commerce Act," and as sustaining that contention they cite section 1 of said act, viz.:

"And it shall be the duty of every carrier, subject to the provisions of this act, to provide and furnish such transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates applicable thereto, and to provide reasonable facilities for operating such through routes and to make reasonable rules and regulations with respect to the exchange, interchange, and return of cars used therein, and for the operation of such through routes, and providing for reasonable compensation to those entitled thereto." Act Feb. 4, 1887, c. 104, § 1, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), as amended by Act June 18, 1910, c. 309, § 7, 36 Stat. 544 (U. S. Comp. Stat. Supp. 1911, p. 1285).

And their argument is that:

"The establishment of such through routes, therefore, was not merely the exercise of a common-law right, which the railroad might at its option exercise or not, but, on the contrary, the rail-

road company would have been derelict in its duty under the Interstate Commerce Act if it had failed to establish such through routes and through rates as were necessary to reasonably accommodate the requirements of the through traffic."

It is sufficient to say here that the same argument was advanced in the Supreme Court (U. S. v. Pacific & A. R. Co., 228 U. S. 104, 33 Sup. Ct. 448, 57 L. Ed. 742), but the court said:

"The right of a carrier to select its connections must be admitted (we state the right as absolute, without regard to the Interstate Commerce Act, for our present purposes), and, if there were nothing else in the case, the conclusion of the District Court would have to be affirmed. But there is another and important element to be considered. The charge of the indictment is that the agreements were entered into, not from natural trade reasons, not from a judgment of the greater efficiency or responsibility of the defendant steamship lines as instruments in the transportation than the independent lines, but as a combination and conspiracy in restraint of trade by preventing and destroying competition in the transportation of freight and passengers between the United States and Alaska and obtaining a monopoly of the traffic by engaging not to enter into agreements with the independent lines. There is a charge, therefore, of infringement of the Anti-Trust Law of something more done than the exercise of the common-law right of selecting connections, and the scheme becomes illegal. Swift & Co. v. United States, 196 U. S. 375, 396 [25 Sup. Ct. 276, 49 L. Ed. 518]. We do not pause to justify this conclusion, either by the general purpose of the act or by its adjudged applications. Its general purpose has been elaborately set forth in very recent cases; and particular instances of its application, pertinent to the case at bar and illustrative of it, are exhibited by Swift & Co. v. United States, supra, and Standard Sanitary Mfg. Co. v. United States, 226 U. S. 20 [33 Sup. Ct. 9, 57 L. Ed. 107]. In those cases, as here, rights were brought forward to justify a purpose which transcended the limits put upon their exercise by the Anti-Trust Act. In those cases, as here, the purpose (the means being different) was the prevention or destruction of competition, and the agreements here are exactly adapted to the purpose. Not the railroad only but the wharves company as well is charged to be in the combination. It was intermediate with the railroad and the steamship lines and discriminated in its wharfage charges, it is alleged, to aid in the purpose of the combination, and, to complete and make effective the purpose, the local (railroad) rates from Skagway to Yukon points were made greater than that part of the through transportation. * * * The plan makes the parts unlawful, whatever they may be independently of it."

This is very persuasive, whether it is or is not dictum. It is so persuasive on this court that it is convincing.

The contention is made:

"That the indictment should have alleged, if such was a fact, that there was competition in the business prior to the unlawful acts of the defendants, and stated in some particular and definite way of what such competition consisted."

The contention does not appeal to me, for, if the position is tenable, then the most flagrant and stringent monopoly possible to conceive would be absolutely immune, provided only it be a pioneer in the field. The case referred to (United States v. Patterson [D. C.] 201 Fed. 724) was where a monopoly was charged, and in describing the monopoly the indictment said that it consisted in drawing to the National Cash Register Company the business which would have been secured by the persons mentioned in the first count as having carried on business during said three years. Now, no such persons were mentioned in the first count, and obviously the contention was that as no such persons were mentioned in the first count; therefore no monopoly was described. But even with that the court rejected a part of the description as surplusage, and said:

"However that may be, the meaning of the pleader is plain; hence the manner of pleading does no injury to the defendants. In such case the court ought to conserve rather than destroy the indictment."

It is also contended that as it is not alleged in the indictment that any other companies would have engaged in the said transportation business, except for the alleged actions of the defendants, the counts are uncertain and indefinite in these respects; and the case of American Banana Co. v. U. S. Fruit Co., 166 Fed. 261, 92 C. C. A. 325, is cited, and attention directed to this language:

"But it is necessary to state facts showing an intention and preparedness to engage in business."

Obviously, in such an action as that it would be necessary so to allege, for it was an action to recover damages under the seventh section of the act, and plaintiff, in such an action, is required to allege facts showing damage; but this is an entirely different kind of an action. I think a case more on

all fours with this, in the particular referred to, is U. S. v. Patterson (a criminal case) 59 Fed. 280, where the court says:

"And those (counts) which do not allege such existence are sufficient, because neither the letter of the statute nor its purpose distinguishes between strangling a commerce which has been born and preventing the birth of a commerce which does not exist."

My conclusion is that the count is not duplicitous; neither is it vague, indefinite, nor uncertain. I fail to see how a man of ordinary intelligence could have any doubt as to what defendants are charged with, if the count be read as a whole and not in fractured segments.

Each individual defendant contends that he is not charged with the commission of any specific acts which constitute a crime.

In the count it is said that:

"A joint through traffic arrangement was entered into by and between the railroad company and the steamship companies, by and through the aforementioned defendants (the latter acting as officers and agents of said corporations), pursuant to which arrangements the said steamship companies should and did bill through north, and the railroad company should and did bill through south only on lines of said steamship companies."

It is admitted by demurrants that by the words "by and through the aforementioned individual defendants, the latter acting as officers and agents of said corporations," the individual defendants are charged with having done the act to which those words refer (defendants' brief, pp. 5, 6), but they say in their brief (65) that that "quotation contains the only charge in the count against any of the individual defendants." In saying this I think they are in error.

The recital of this joint through traffic arrangement is but a very small part of the indictment; it is not the be-all and end-all of the conspiracy. That act alone is not the conspiracy, nor is it illegal, nor would it effect the object of a conspiracy in restraint of trade. Something more was done. What else was done, and by whom was it done? The count answers both these questions. It details the further things done, and says they were done by the defendants. That means all of them, not some of them, for the term "the defendants" is, on

page 2 of the indictment, declared to refer to certain corporations and individuals, being the same persons whose demurrers are now being considered.

The further things charged to have been done are the following: The defendants are charged with having "fixed the rates" and with having "arranged and agreed" that the railroad company should refuse to enter into any such joint traffic arrangement with any other carrier, and with having arranged and agreed that the wharf company should charge $1 a ton on freight received from them as against $2 per ton on freight received from any other transportation company, and they ("the defendants") were the persons who did the arranging and agreeing for the higher rates from Skagway to Yukon river points.

The Swift Case (U. S. v. Swift [D. C.] 188 Fed. 92) is cited by defendants, and attention directed to the following language of the court:

"The indictments charge the ultimate plan, the specific acts by which it was carried out; and further that those specific acts were planned and executed by the three groups of individuals, each member of each group acting for himself and every other member of the group."

It is true that, this being a charge of conspiracy "in restraint of trade," it is necessary to charge that the defendants performed specific acts, but it is not necessary to segregate the acts and to charge each act to a segregated defendant, for, in a conspiracy, all conspirators are doers of the acts done to effectuate the object of the conspiracy.

Here the specific acts are not segregated, and no act is charged to some one or more particular defendants in exclusion of the other defendants. The pleader has not, in naming each specific act, pointed to a particular defendant and said, "Thus didst thou, defendant No. 1," and "Thus didst thou, defendant No. 2," but he has named all the acts, and instead of saying that they were performed by groups of men, he has pointed to all the defendants and said, "These are your acts."

When charging the doing of these acts by the defendants, the indictment does not distinguish between the defendants. It says the defendants did them. The individual defendants may have been the real moving power, the dei ex machina, the most culpable of all the alleged conspirators.

Counsel for the individual defendants ask:

"Will the government claim that acts were done by the individual defendants as individuals or as agents of the corporations? This the individual defendants have a right to know at this time. If they are charged with acts done as agents of the corporations, that must be put in a position where they can defend those charges. If it is intended to charge them with doing acts as individuals, then they must have an opportunity to meet that charge, but, as the indictment stands, they do not know what the government will claim."

Now each individual certainly knows whether or not he did the acts charged. If he knows that he did the acts, he certainly knows whether he did them as an individual, or as the representative of a corporation, or as both, and, if he knows that he did the acts as representative of a corporation, he must know which corporation he represented and in what capacity he represented it.

The case of In re Greene (C. C.) 52 Fed. 104, cited by the defendants, is not in point, for in that case "all the acts and matters charged as criminal offenses were, as shown upon the face of the indictment, the acts of the Distilling & Cattle Feeding Company; * * * nor does it appear whether their (defendants') connection therewith was other than that of mere stockholders." In the case at bar the charge is against certain named defendants, and it is charged directly that they did the unlawful acts, and the demurrer admits the truth of the charge. It is evident that the individuals are charged as fully and directly as the corporations are charged.

By what warrant, then, can it be contended that "all the other acts charged in the count were the acts of the defendant corporations, and that it is not stated that any of those acts were done or performed by individual defendants"? As well say that they were the acts of the individual defendants and not of the corporations. Whether or not those acts are "pe-

culiarly corporate acts," for which the individual defendants are criminally responsible, depends upon evidence.

"It cannot be ascertained on demurrer whether the acts were all corporate acts or not, or whether or to what extent the individual defendants, in doing what they did, were acting as mere clerks, or as aiders, devisors, or abettors. * * * The corporations declare that, inasmuch as no corporation can commit a crime except through human instrumentality, the acts were human; but, as there was but one crime, it must be fundamentally wrong to charge both the corporation and its instrument therewith. This argument seems to depend upon the assumption that every factum set forth in the indictment is a piece of joint activity by all the defendants. This is not true. It is charged that the unlawful combination, conspiracy, or monopoly was the result of joint action, but all of the persons alleged to be jointly responsible were not necessarily all doing the same things at the same time. There is nothing inherently impossible in the corporations doing one thing and the individuals another at or about the same time, which things were utterly different; yet all, when dovetailed together, go to make up the joint product labeled by the act—combination, conspiracy, or monopoly. It is conceivable that the evidence may show that the individual defendants were not free agents, but acted under a species of corporate coercion, for which they should not be held personally responsible; but it is impossible to arrive at this conclusion on demurrer. The series of cases arising under the indictment regarding the Distilling & Cattle Feeding Company (In re Greene [C. C.] 52 Fed. 104; U. S. v. Greenhut [D. C.] 51 Fed. 205; and In re Terrell [C. C.] 51 Fed. 213) show no more than that the courts have conclusively presumed that the relation between a corporation and its stockholder is not such that the latter can be held to criminal responsibility for a violation of the law in which he is not alleged to have personally participated." U. S. v. MacAndrews, supra.

The demurrers cannot be sustained on this ground.

### Count 2.

Is count 2 duplicitous? As to count 1 it was contended that, if in charging a conspiracy the result of the conspiracy is also stated, the count is duplicitous, while as to count 2 they contend that, if in charging the result it should also be stated as a fact that defendants combined and conspired to effectuate that result, the count is duplicitous. I do not think that the last-mentioned contention has any greater force than the first-mentioned contention.

The count begins by saying that defendants monopolized trade and commerce by eliminating competition in transporta-

tion between the southern ports and Yukon ports on a line of traffic "hereinafter to be described." Then follow allegations of incorporation of the companies and of the continuity of route, and of the fact that the railroad company already had monopoly from Skagway north, and that the wharf company had monopoly at Skagway, and the acquirement by steamship companies of the monopoly of transportation from Skagway south and of the means by which it was acquired and of the participation by defendants in that acquirement; and so a monopoly of the entire route from southern ports to Yukon ports is charged against all defendants, inasmuch as all defendants are charged with creating the monopoly of transportation between Skagway and southern ports, which is but a portion, albeit a most important portion, of the route from southern ports to Yukon ports. It was unnecessary to say that the defendants combined and conspired to bring about this monopoly in that one particular link of the chain; it would have been sufficient to say that they caused it to exist; but, the words conspired and combined having been used, they may be rejected as surplusage. It is immaterial whether they conspired and combined on that link; it is sufficient that they created that minor monopoly and that that minor monopoly is a component of the major monopoly with which they are charged.

What was said as to time alleged, and the Commerce Act, when discussing count 1, applies with equal cogency to count 2.

And what was said as to the charge against the individual defendants applies here as well as there. I can see no valid objection to count 2.

If any offense is charged in count 1, the same offense is charged in count 2.

In U. S. v. MacAndrews & Forbes, supra, a question was passed upon almost identical with this; the court saying:

"The rule regarding identity of offenses is to discover whether the crimes under consideration are in substance precisely the same or of the same nature or species, or that one crime is an ingredient of the other. In this case the crimes of monopoly and combination are legally distinct. The offense under the first count was complete when the combination was actually formed with intent to

bring about restraint of interstate commerce. The additional overt acts were but cumulative evidence from which the true intent, purpose, and continuance of the combination might be inferred. But they were themselves the proof of the monopoly, and the monopoly consisted in their aggregate effect. That the prosecution in overwhelmingly proving the existence, and intent, and continuance of the combination proved the monopoly does not, in my opinion, render the offenses identical, merely because all the evidence offered was in a sense applicable to both counts."

Identity of facts does not necessarily constitute an identity of crimes; if there were no facts, there would never be any crime, no matter what the law, and, if there were no law covering the case proved, it would make no difference what the facts were. There must be an identity of both facts and law.

As said in the case just cited:

"The true test of the correctness of defendants' position is whether, upon a review of both the facts and the law, identity exists between the offenses proved in this case and called in the first (count) combination and in the third (count) monopoly."

And the court held that, although the facts were the same in the two counts, yet the law was different, and so sentence on each count was pronounced.

It is true that in the case just cited the point was presented on a motion after a verdict of guilty, while in the case at bar it is presented on a demurrer, but that truth can make no difference, for, by demurring on that ground, the facts are admitted to be the same in each count, and so the facts in each count are already reviewed and found to be identical, and that leaves only a consideration as to whether the law relied on is identical in each count. Clearly it is not identical, for count 1, the conspiracy in restraint, comes under section 1, while count 2, the actual creation of a monopoly, comes under section 2, of the Sherman Act. There then being no identity in law, there is no identity of crime, although the facts charged and proved may be the same. This contention is likewise overruled.

The conclusion, therefore, is that each demurrer to each count should be overruled; and it is so ordered.