STATE OF IOWA, Appellee, v. WALTER JOHNSON, Appellant.

No. 41001.

December 13, 1932.

John Fletcher, Attorney-general, and Neill Garrett, Assistant Attorney-general, for appellee.

Tinley & Tinley and Robertson & Robertson, for appellant.

Wagner, J.—The indictment in this case charges the defendant with the crime of murder of his wife, Millie Johnson, on or about December 23, 1927. The charge therein is murder in the first degree. The case has been twice tried in the district court. As the result of the first trial, the defendant was acquitted of the crime of murder in the first degree and found guilty of murder in the second degree. On appeal to this court, the judgment of the trial court was reversed. See State v. Johnson, 211 Iowa 874. Upon the issuance of procedendo from this court, the defendant was placed on trial in the district court for the crime of murder in the second degree. As the result of the trial, the defendant was found guilty of the included offense of manslaughter, and from the judgment rendered, the defendant has appealed.

For brevity, we will not repeat the facts, except as it may become necessary, but refer the reader to the opinion rendered on the former appeal. The trial in the instant case was begun on April 6, 1931.

One Lester Bertelsen, son of the decedent and stepson of the defendant, was a witness for the State, and gave material testimony against the defendant. It appears that said witness, shortly prior to the trial of the instant case, had been convicted of a felony in the Pottawattamie County District Court, and was, at the time of the trial, in the county jail, waiting to be taken to the penitentiary. Said witness did not testify as to his vocation on direct examination. On cross-examination, he testified that he is a laborer, and was at that time living in the county jail, and had lived in the jail since March 4th; that he had been convicted of a felony in the district court of Pottawattamie County; that he was just staying in

the county jail temporarily; that he had not been doing anything for a week or so before December 23, 1927, the time of the commission of the offense; that he had not had any business for the last two or three months. During the continuance of the cross-examination of said witness, the following occurred:

"Q. Isn't it a fact, instead of you being a common laborer, that you were a bootlegger at that time? A. No, sir. Q. Isn't it a fact you have been a bootlegger since that time, and been in the business of breaking into cars and committing larcenies, and things of that kind, since that time?"

Appropriate objection by the State to this interrogatory was sustained. The defendant then made the following offer:

"The defendant offers to show by cross-examination of this witness, who has testified that his business was that of a common laborer, that since the 23d of December, 1927, he has been engaged as a common laborer, as he has testified, but that has not been his occupation, but that he has been engaged in committing larcenies and burglaries and bootlegging, and that has been his general occupation and business, instead of being a common laborer." ·

To the offer the State made appropriate objection, which was by the court sustained. The defendant assigns the aforesaid rulings of the court as error.

It will be noted that the witness answered that he had been convicted of a felony. See Section 11270, Code, 1931. The witness also gave his place of residence as the county jail, and his occupation as that of a laborer, and testified that he was not a bootlegger "at that time" (the time of the commission of the offense). The question, which the court did not permit the witness to answer, and the offer made, do not refer to the ordinary meaning of the terms occupation, vocation, or business, but do refer to specific crimes inquired about by the defendant's attorney. The crimes mentioned in the interrogatory and offer can be committed by one, regardless of what may be his occupation, business, vocation, or calling. It will be noted that there is no showing that the crimes concerning which inquiry was made were felonies, and the witness was not asked as to whether he had been *convicted* of any specific crimes which constitute felonies. We have properly held that a witness may be asked on cross-examination as to whether or not he had been

convicted of a specific crime which is a felony, such as rape. See State v. Friend, 210 Iowa 980. While a witness may properly be required to answer whether he has been *convicted* of a felony or of a crime which constitutes a felony, he cannot properly be required to answer whether he has *committed* certain specific crimes not connected with the one for which the defendant is on trial, be they felonies or misdemeanors. The appellant relies at this point upon State v. Row, 81 Iowa 138; State v. Pugsley, 75 Iowa 742; King v. Chicago, M. & St. P. R. Co., 138 Iowa 625; State v. Poston, 199 Iowa 1073. A careful examination of said cases will show that they do not support the contention now urged by the appellant. In the Row case, we held that it was proper cross-examination to require the witness to state that his business was whitewashing, calcimining, and frescoing, and that his residence was in the county jail. Likewise, in the instant case, the court permitted the witness to answer, on cross-examination, that he is a laborer, and that his place of residence is in the county jail. In State v. Pugsley, 75 Iowa 742, we held that it was proper to require the witness on cross-examination to state that he was living in the county jail, and the length of time that he had been there, and that he was waiting for the court to come. The inquiries referred to in the other two cases relied upon by the appellant are not analogous to the interrogatory propounded to the witness and offer made in the instant case. We have often held that the permissible range of cross-examination of witnesses for the purpose of affecting their credibility in general rests in the sound discretion of the trial court. See State v. Kendall, 200 Iowa 483; State v. Madden, 170 Iowa 230; State v. Osborne, 96 Iowa 281; State v. Burris, 198 Iowa 1156; State v. Brandenberger, 151 Iowa 197; State v. Chingren, 105 Iowa 169; State v. Watson, 102 Iowa 651; State v. Poston, 199 Iowa 1073. The correct rule is aptly stated in 40 Cyc. 2570, in the following language:

"The extent to which a party or witness may be cross-examined for the purpose of affecting his credibility rests in the sound discretion of the trial court, whose action will not be revised on appeal unless an abuse of such discretion is made to appear."

We need not and do not determine whether the question propounded or the offer made was such as that the witness would not be compelled to answer for the reason that, under the provisions of Section 11267, Code, 1931, the matter elicited in the question would

tend to render the witness criminally liable or to expose him to public ignominy. The privilege to refuse to answer, under said section, is one personal to the witness, and the record does not show that the witness claimed the privilege. Since the court required the witness, in the instant case, to answer that he had been convicted of a felony, and since the witness did answer the question as to what was his business or occupation, and since the court required to witness to state that he was residing in the county jail, all for the purpose of affecting his credibility as a witness, it is sufficient to say that the ruling of the court was right, and that there was no abuse of discretion on the part of the trial court in refusing the appellant to go to the limit sought in the asking of the aforesaid interrogatory and in the making of the aforesaid offer. There is no error at this point.

 The evidence shows that, after the defendant shot his wife, he also shot himself. A doctor, who was called as a witness for the State, testified that the wound was on the left side of defendant's body. His attention was called to his testimony at the previous trial, wherein he stated that the bullet in defendant's body entered just about the nipple on the right side. The witness conceded that his testimony at the prior trial, which was given shortly after the crime was committed, was correct, and that he could verify the location of the wound by an examination of the defendant, which was done, after which he frankly admitted that the wound in defendant's body was upon the right, instead of the left, side. The defendant's attorney then said, "That shows how treacherous memory is," and then asked the witness: "Aren't you liable to be mistaken on some of these other matters you have testified to?" The court sustained an objection to the interrogatory, and this ruling by the court is now urged as error. Immediately after the sustaining of the State's objection to the aforesaid interrogatory, the witness testified: "When I testified a little while ago that this wound on defendant was on his left side, I was simply mistaken about it."

By the asking of this interrogatory, the attention of the witness was not called to any specific portion of his testimony which differed from his testimony on the prior trial. We find no error at this point. It is a matter of common knowledge that the memory is not infallible, which fact was admitted by the witness.

 The testimony shows that the defendant had been drinking intoxicating liquor on the same afternoon and evening and prior

to the time of the commission of the offense. His testimony is, in substance, that he was in such a drunken stupor that he does not remember or know anything about the shooting of his wife. There is some other evidence in the record relative to the defendant's drunken condition at the material time. It must be borne in mind that the defendant was placed upon trial in the district court for murder in the second degree, but that he was acquitted of said charge and convicted of the included offense of manslaughter. The appellant complains because the court did not give his requested instructions upon the question of drunkenness. In said requests he asked the court to instruct the jury that, if they should find from the evidence that the appellant was so drunk at the time in question that he was incapable of distinguishing between right and wrong, or of knowing what he was then doing, it would be their duty to acquit the defendant of both murder in the second degree and manslaughter. The court did not err in refusing to give the requested instructions.

Manslaughter is not a degree of murder, but an included crime. See State v. Wilson, 166 Iowa 309. Manslaughter differs from murder in this: that, though the act which occasions the death be unlawful and likely to produce great bodily harm, yet malice, express or implied, which is the very essence of murder, is not required, to constitute manslaughter. A specific intent to kill or to take life is not necessary to constitute murder in the second degree, but is indispensable to the crime of murder in the first degree. See State v. Johnson, 211 Iowa 874, and cases therein cited. Neither is a specific intent to kill or to take life a necessary element in the crime of manslaughter.

We have held in numerous cases that voluntary drunkenness is no defense for crime unless a specific intent is an essential element of the offense charged, and not then unless the accused was so drunk as to be incapable of entertaining the requisite specific intent. See State v. Wilson, 166 Iowa 309; State v. Maxwell, 42 Iowa 208; State v. Bell, 29 Iowa 316; State v. Sparegrove, 134 Iowa 599; State v. Yates, 132 Iowa 475; State v. Donovan, 61 Iowa 369; State v. Desmond, 109 Iowa 72; State v. Harrison, 167 Iowa 334; State v. Patton, 206 Iowa 1347; 16 C. J. 106, 107, 108. In State v. Wilson, 166 Iowa 309, with reference to an instruction on drunkenness given by the trial court, we said, "As neither the specific intent to kill nor premeditation and deliberation are essential to con-

stitute murder in the second degree or manslaughter, the court did not err in omitting reference to these offenses in the instruction given," but added:

"There was evidence of provocation which, if believed, must have been found sufficient, and if acted on by the accused while under the dominion of passion, rather than because of previous malice, would have reduced the offense to manslaughter. The court might well have told the jury that, in passing on the issue of whether defendant, in what he did, the provocation having been found sufficient, was dominated by passion or previous malice, the evidence of intoxication might be considered."

In the instant case, the court instructed the jury that, if a party has become so far intoxicated and has so far lost his mental powers, by reason of such intoxication, that he has become incapable of forming a specific intent in his mind, he cannot be convicted of any offense of which such specific intent is a material ingredient; that, if they should find from the evidence that the defendant was in such a state of intoxication as to be incapable of forming in his mind the intent to kill her (the decedent), or the intent to inflict great bodily injury upon her, then the defendant cannot be convicted of any higher offense than manslaughter. In view of our previous pronouncements, this instruction was as favorable as the appellant can require. No matter what may be the degree of voluntary intoxication, it does not constitute a defense to the crime of manslaughter, for the manifest reason that a specific intent to kill or to take life is not a necessary element of the crime of manslaughter.

In the first appeal in this case (see State v. Johnson, 211 Iowa 874) we said:

"Instructions requested by the defendant as to the effect of intoxication as a defense were properly refused. Each paragraph thereof gave too great emphasis to the ability of the defendant to know or determine right from wrong."

What we there said is equally applicable to the instructions requested by the appellant in the instant case. Also, see State v. Harrison, 167 Iowa 334; 16 C. J. 106; State v. Donovan, 61 Iowa 369; State v. Williams, 122 Iowa 15. In State v. Harrison, 167 Iowa 334, the defendant contended that an instruction given to the jury

upon the question of drunkenness was erroneous. His contention was that the instruction was erroneous in requiring the jury to find that, by reason of intoxication, the defendant was unable to form the specific intent involved in the crime charged, his contention being that the test is "whether or not defendant was so far under the influence of liquor that he was incapable of distinguishing the right or wrong of what he did." Relative to this contention we declared:

"That the last point made against the instruction is without merit is squarely held in State v. Donovan, 61 Iowa 369."

In State v. Williams, 122 Iowa 115, where the defense was drunkenness, we said:

"Moreover, the instruction as given was erroneous in that the ability to distinguish between right and wrong test there given is not the proper one."

It is clearly apparent from the foregoing that the court was not in error in refusing appellant's requested instructions upon the question of intoxication.

For the same reasons, the court did not err in refusing to submit to the jury special interrogatories embodying the same thoughts as contained in the requested instructions hereinbefore mentioned.

The appellant complains because the court did not give his requested cautionary instruction relative to declarations and admissions. On the former appeal, the defendant requested a cautionary instruction relative to this matter, and the court refused the same, and did not give any instruction upon the subject. The majority of the court were of the opinion that, under the record, the refusal of the court to give a cautionary instruction upon the subject "should not be held to have been without prejudice." See State v. Johnson, 211 Iowa 874. In the instant case, the court did give a cautionary instruction upon the subject, which embodies the matters usually given in an instruction of this character; and in addition thereto, the court therein called to the attention of the jury the claim of the defendant that, at the time some of the alleged statements and admissions were made by him, he was so far intoxicated as to be unaccountable and incapable of expressing himself. The instruction given by the court is complete and adequate to fully protect the rights of the appellant.

■ The appellant complains that the court did not give an instruction on circumstantial evidence, as requested by him. It is quite obvious that there is no error at this point, as the evidence in the case tending to connect the defendant with the commission of the offense is not circumstantial, but direct.

■ As to the effect to be given by the jury to the evidence introduced by the appellant relative to his being a quiet, peaceable, and law-abiding citizen, and a man of good moral character, the court, in Instruction No. 31, instructed as follows:

"The defendant herein has offered testimony as to his reputation in the community where he resides as to being a quiet, peaceable, and law-abiding citizen and a man of good moral character, and such testimony should be considered by you, with all the other evidence in the case, in determining his guilt or innocence. If the evidence of his reputation and good moral character as above indicated is sufficient to generate in your minds a reasonable doubt as to the defendant's guilt in this case, he is entitled to an acquittal, even though, without proof of such good reputation and character, you would convict him. Evidence of such good reputation and character may be sufficient of itself to generate a doubt as to the defendant's guilt in this case, and if such evidence has created such a doubt in your minds as to the guilt of the defendant herein, you should find him not guilty."

This instruction is practically identical with an instruction requested by the appellant, and was followed by Instruction No. 32, which reads as follows:

"It is for you to determine, however, what weight shall be given the evidence of this character. A good reputation in such matters is no defense or excuse for the commission of a crime when it is in fact shown to have been committed; but such evidence is offered and received upon the theory that a person having a good reputation as to such matters, and being of good character, is less likely to have committed an offense with which he is charged; and it is to be considered in connection with all other evidence in the case in determining whether or not the party charged did in fact commit the offense."

The appellant's complaint, in substance, is that the court should have given only Instruction No. 31, and not have given Instruction

No. 32. His contention is that Instruction No. 32 is inconsistent with Instruction No. 31. It is quite obvious that it is not inconsistent with, but that it is only additional to, Instruction No. 31. The appellant excepts to the first sentence of Instruction No. 32, to wit, "It is for you to determine, however, what weight shall be given the evidence of this character," and further excepts to that portion thereof reading:

"But such evidence is offered and received upon the theory that a person having a good reputation as to such matters, and being of good character, is less likely to have committed an offense with which he is charged; and it is to be considered in connection with all other evidence in the case in determining whether or not the party charged did in fact commit the offense."

There is no merit in the exceptions taken by the appellant to such instruction. See State v. Ormiston, 66 Iowa 143; State v. Donovan, 61 Iowa 278; State v. Shultz, 177 Iowa 321, 322; State v. Bosworth, 170 Iowa 329; State v. King, 122 Iowa 1; State v. Bell, 206 Iowa 816. Many other cases could be cited on this proposition. In State v. Ormiston, 66 Iowa 143, 151, this court declared:

"That part of the instruction given which is more especially objected to is that in which the jury was instructed that they might consider good character as 'tending to show that men with such character would not be likely to commit the crime charged.' It is said that 'the true rule is that it should be considered as tending to show that they did not commit it.' In our opinion the objection is not well taken."

In State v. Shultz, 177 Iowa 321, 325, we said:

" 'It has been the repeated holding of this and other courts that, while good character is not a complete defense to a criminal charge, it is a defensive circumstance * * * and that it should be considered by the jury, in connection with all the other evidence, in determining the guilt or innocence of the accused. State v. Donovan, 61 Iowa 278. It may be considered as tending to show "that men of such character would not be likely to commit the crime charged." State v. Ormiston, 66 Iowa 143. It should be considered "irrespective of whether the other evidence is conclusive or inconclusive, and it is for the jury to determine what weight such evidence shall have." ' "

In State v. King, 122 Iowa 1, we made the following pronouncement:

"Such evidence, however, has been frequently declared to afford no defense. It is received as merely tending to show that the accused would not have been likely to have committed the crime charged, and is to be given such weight only as the jury may deem it entitled to receive."

In State v. Bell, 206 Iowa 816, the trial court gave the following instruction:

"Previous good character or reputation is not, of itself, a defense, but if established, it is a circumstance which should be considered by the jury in connection with all other evidence, and should be allowed such weight as the jury believes [it] is fairly entitled to receive, as tending, if it does, to show that a man of such reputation or character would not be likely to commit the crime charged; and it may be sufficient to turn the scale in his favor, but its value as defensive evidence in any given case is to be determined by the jury."

In passing upon this instruction, we said:

"An instruction similar, in most respects, to the one given, was passed upon by this court in State v. Donovan, 61 Iowa 278, and was held good as against the very assault made upon the instruction in the instant case."

In view of our previous pronouncements, from which quotations are herein made, it is quite obvious that the trial court committed no error in the giving of Instructions Nos. 31 and 32.

We have carefully considered every proposition urged by the appellant as a ground for reversal, and find no error. The judgment of the trial court is hereby affirmed.—Affirmed.

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, ALBERT, KINDIG, and MITCHELL, JJ., concur.