**STATE of Iowa, Appellee,**

v.

**James Arthur HUNLEY, Appellant.**

**No. 53170.**

Supreme Court of Iowa.

May 6, 1969.

Hugh W. Lundy, Albia, for appellant.

Richard C. Turner, Atty. Gen., James C. Sell, Asst. Atty. Gen., and W. K. Cash, County Atty., for appellee.

SNELL, Justice.

Defendant has appealed following verdict of guilty of going armed with a knife with intent to use the same unlawfully (section 695.1, Code of Iowa) and judgment thereon.

The State served notice of appeal from a directed verdict dismissing a charge that defendant was a habitual criminal within the definition of section 747.5, Code of Iowa. The State's appeal has not been pursued and need not be considered except in relation to the current offense.

I. Following arrest, appointment of counsel, waiver of preliminary hearing and bind over to grand jury defendant was charged with going armed with a knife having a blade of three inches in length with intent to use the same unlawfully against the person of another.

The same information charged defendant as a habitual criminal in that he had twice before been convicted of a felony.

Defendant's demurrer was overruled.

Defendant's written brief and argument claims error for the reason the information charged two separate and distinct crimes in that the current charge was one and being a habitual criminal was a second charge contrary to section 773.36, Code of Iowa.

Section 773.36 provides that an indictment shall charge but one offense. Section 769.13 says that all provisions of

law applicable to indictments shall as nearly as may be apply to informations. Defendant's complaint is without merit.

Section 769.6, Code of Iowa, provides:

"Allegations of prior convictions. If the offense charged is one for which the defendant, if convicted, will be subject by reason of the Code, to an increased penalty because of prior convictions, the allegation of such convictions, if any, shall be contained in the information. A supplemental information shall be prepared for the purpose of trial of the facts of the current offense only, and shall satisfy all pertinent requirements of the Code, except that it shall make no mention, directly or indirectly, of the allegation of the prior convictions, and shall be the only information read or otherwise presented to the jury prior to conviction of the current offense. The effect of this section shall be to alter the procedure for trying, in one criminal proceeding, the offenses appropriate to its provisions, and not to alter in any manner the basic elements of an offense as provided by law."

The procedure followed in the case before us was in strict compliance with the statute. Defendant was charged with violation of section 695.1 and also charged with being a habitual criminal.

Supplemental information was filed and used. He was tried thereon. After conviction he was tried as a habitual criminal.

We have repeatedly held that a charge such as made here is not bad for duplicity. In State v. Eichler, 248 Iowa 1267, 1273, 83 N.W.2d 576, 579, we said:

"Our own cases have said repeatedly that an allegation of a prior conviction does not create a separate crime, but is made only for the purpose of determining the penalty to be imposed upon conviction for the primary offense. [Citations]

" * * *

"Of course, if the allegation of former convictions is made merely for the purpose of enhancing the penalty to be imposed upon conviction of the primary offense, then pleading such prior convictions is not the allegation of a separate offense and the information or indictment is not bad for duplicity. It is obvious that there can be no convictions for the prior offenses charged; those convictions have already been had. They mean nothing, except as adjuncts to the primary offense charged. If on trial there is no conviction on the primary offense, the former convictions are meaningless; they can be used only if there is a conviction of the instant offense charged."

On page 1271 of 248 Iowa, on page 578 of 83 N.W.2d we quoted the Supreme Court of the United States in McDonald v. Massachusetts, 180 U.S. 311, 313, 21 S.Ct. 389, 390, 45 L.Ed. 542, as follows:

" 'The allegation of previous convictions is not a distinct charge of crimes, but is necessary to bring the case within the statute, and goes to the punishment only.' "

II. Defendant claims error in failing to sustain defendant's motions for directed verdict in that the State failed to sustain its obligation to show that defendant did go armed with any instrument with intent to use it unlawfully. The resolution of conflicts in the evidence was for the jury. The jury answered adversely to defendant. Our duty is to determine the sufficiency of the evidence to generate a jury question.

A brief review of the State's testimony will suffice.

Ronald Mock, an Albia policeman, had stopped at a highway intersection. A black car proceeded east at a high rate of speed. Mr. Mock pursued. The black car eventually stopped on the shoulder of the highway. Mr. Mock went to the car. He saw that defendant was the driver. A lady, later identified as defendant's wife, was in the front seat. A boy, later identified as defendant's stepson was in the back seat.

Mr. Mock told defendant to get out of the car, that he was under arrest for drunken driving. Defendant got out of the car and stood beside it for a brief period. Mr. Mock told defendant that a patrolman would be on the scene in a few minutes. (He had radioed for help.) Defendant got back in the car and tried to start it but could not.

We quote from the record of Mr. Mock's testimony:

"At that time, I opened the car door and told Mr. Hunley to get out of the car, which he did. We started to walk back toward the police car. I had him by the arm, but he pushed me away.

"Q. Then what happened? A. As he was pushing me away, I saw a knife blade flashing in the air. I raised my arm at the approximate time I stumbled or fell or was pushed to the ground. * * *

"I rolled into the ditch, and then got up on my feet and ran farther into the ditch, I then turned around and pulled out my gun and ordered Mr. Hunley, the defendant, who was standing on the edge of the shoulder to drop the knife. I don't remember that he said anything to me at that time. He then dropped the knife and put his hands on top of his head and as I started to come up out of the ditch, Mr. Hunley started to walk, he reached down and picked up the knife, and walked back to his car and put the knife in his car. He then walked back to the back of his car and put his hands over his head, where he held them for approximately two minutes. When Mr. Hunley walked back of his car and put his hands over his head, I came up out of the grader ditch, went to the patrol car to see whether any assistance had arrived, which I had called for. As I was talking on the radio, Patrolman Buol arrived. We walked up to Mr. Hunley, I took hold of one arm and Patrolman Buol took hold of the other and turned Mr. Hunley around and Patrolman Buol put handcuffs on him. * * *

"Q. After Patrolman Buol arrived on the scene and placed the handcuffs on the defendant, what then happened out there? A. The defendant, Mr. Buol and myself were walking back towards the police car. Mr. Hunley started to kick at us. Patrolman Buol and I pushed him to the ground and he then quit kicking and fighting and we assisted him back on his feet."

On redirect examination the policeman testified:

"The first time I saw a knife blade was when the defendant was holding it. I was maybe two feet from the defendant. He took two swings at me. The first time I saw the sheath was when I took it from him at the county jail." * * *

A deputy sheriff arrived shortly after the patrolman. Defendant said his wife was ill; that she had an epileptic seizure. She was taken to the hospital to be checked.

We quote from the testimony of the patrolman:

"The deputy sheriff of Monroe County, Iowa, came out and he and I tried to put the defendant into the police car. He resisted by trying to jerk away and kick. He, the defendant, was wrestled to the ground by the deputy sheriff. * * *

"The rescue unit came, but instead of taking Mrs. Hunley in the rescue unit, we placed Mr. Hunley on the stretcher. * * *

"The defendant reacted violently and tried to throw his shoulders and resisted being put on the cot. He kept cussing and making some comment about his wife, something to the effect that she was sick."

There was an outside witness who testified to the knife episode. Cecil Kearney was driving between Ottumwa and Albia. We quote from his testimony:

"Well, as I was coming over the hill, I saw the Albia Police car at the bottom of the hill, with the light flashing and a stopped black Ford * * *. As I approached the police car and the other car,

Ronnie was standing at the door of the police car, or of the black car, and a man sitting in the seat, evidently was talking to him. I didn't have my window down on the car, so I drove over to the other side to see if there was any problem * * *. So I watched Ronnie and the man talking and the man got out of the car, Ronnie was standing there with his stick in his hand, and when the man got out of the car, he stood up in front of Ronnie for a minute and then a knife appeared with him striking down this way. * * * He struck down and stood there with the knife * * *."

The sheath for the knife was on defendant's belt. Defendant admitted ownership of the knife and sheath. He said he had carried it that morning while hunting and dressing rabbits. He had forgotten to take it off. He said when he got out of the car he held the knife with two fingers on top of his head. He denied striking at anyone, denied intent to use the knife unlawfully and denied everything except intoxication and driving while intoxicated.

Defendant's testimony was supported by the testimony of his wife and stepson.

The evidence presented a jury question. The problem was factual. The motions for directed verdict were properly overruled.

III. The court instructed on intent and on intoxication as it related to intent. No issue as to the correctness of the instructions has been raised.

Defendant now argues that the evidence was insufficient to convict.

■ IV. We view the evidence in light most favorable to the State. It is the jury's function to decide disputed fact questions. The jury's finding is binding on us if there is substantial support therefor in the evidence. The court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge.

These propositions contrary to defendant's argument are well settled but see State v. Wimbush, Iowa, 150 N.W.2d 653 and State v. Horrell, Iowa, 151 N.W.2d 526.

Defendant argues that the evidence should have raised a reasonable doubt of defendant's guilt.

■ Whether there was reasonable doubt was for the jury to determine. We should not interfere.

■ Defendant argues that evidence presented by defendant established a preponderance of evidence that defendant was intoxicated and incapable of forming an intent. That too was for the jury.

■ Defendant argues that the State's evidence was uncorroborated. There was ample evidence to generate a jury question. We know of no law requiring corroboration in a case of this kind.

V. The trial court instructed fully on the question of intoxication to the effect that if intoxication rendered defendant incapable of forming an intent to commit the crime the verdict should be not guilty.

■ "The rule in Iowa is well settled. Drunkenness is no excuse for crime and evidence thereof is not admissible for the purpose of excusing the offense but is admissible for the purpose of showing that there could be no criminal intent. State v. Maxwell, 42 Iowa 208, 212, 213; State v. Johnson, 215 Iowa 483, 488, 245 N.W. 728; State v. Wilson, 234 Iowa 60, 76, 11 N.W.2d 737; 22A C.J.S. Criminal Law § 621.

■ "Even where intent is an essential element intoxication is an affirmative defense with the burden resting on defendant to establish it by a preponderance of the evidence. State v. Wilson, supra, [234 Iowa] loc. cit. 77, 11 N.W.2d 737." State v. Wharff, 257 Iowa 871, 876, 134 N.W.2d 922, 925.

Evidence as to defendant's intoxication was admitted. We find no error.

VI. Trial on the charge of habitual criminal resulted in a directed verdict for defendant.

Defendant was sentenced under section 695.1. We find no error.

The case is

Affirmed.

All Justices concur, except BECKER, J., who in separate opinion concurs in result and RAWLINGS, J., who concurs in result.

BECKER, Justice (concurring in result).

I concur in the result. I do not concur in the statement that "intoxication is an affirmative defense with the burden resting on defendant to establish it by a preponderance of the evidence." This type of statement gives rise to the same troublesome question finally resolved in alibi cases by State v. Galloway, (decided April 8, 1969) Iowa, 167 N.W.2d 89; Cf. State v. Carter, Iowa, 161 N.W.2d 722, 725–727. It would seem the statement is unnecessary to this opinion.