**STATE of Iowa, Appellee,**

**v.**

**James Michael BAYCH, Appellant.**

**No. 53420.**

Supreme Court of Iowa.

July 24, 1969.

: Gerald W. Magee, Jefferson, for appellant.

Richard C. Turner, Atty. Gen., James C. Sell, Asst. Atty. Gen., and R. K. Richardson, County Atty., for appellee.

LARSON, Justice.

On January 15, 1968, a county attorney's information was filed charging the defendant, James Michael Baych, with carrying a concealed weapon in violation of section 695.2, Code of 1966. Subsequent to a plea of not guilty, a trial by jury was had, resulting in conviction as charged. On October 4, 1968, defendant was sentenced to the Men's Reformatory at Anamosa for a term not to exceed five years, and on November 13, 1968, he filed notice of appeal.

The record discloses that about 7:30 on the evening of January 15, 1968, Joseph Charles Goodell and Wayne Juhl, of Dana, Greene County, Iowa, observed a black 1959 or 1960 Thunderbird automobile parked in the center of the street in front of their respective homes. Investigation disclosed that a man, later identified by the two as the defendant, was sitting alone in the automobile and, when asked by Juhl if he was waiting for someone, defendant said something about a "buddy" could drive. Both Juhl and Goodell observed a pistol on the dashboard of the car, later identified as defendant's automobile. After a conference, Goodell had the man come into his house for coffee, at which time both witnesses observed the defendant and believed he had been drinking. Juhl testified that, after defendant had been given coffee, he went back to his car, got in the driver's seat, and drove away.

At a hearing on defendant's motion to suppress evidence seized from his automobile, on the grounds that the search and seizure was illegal and in violation of Amendment 4 of the United States Constitution and Article I, Section 8, of the Constitution of the State of Iowa, Officer Kenneth Bolz, a highway patrolman, alone testified. He told of stopping defendant's automobile and of finding a .38 caliber revolver therein pursuant to a consent search of the car. The trial court overruled this motion.

At the trial Officer Bolz stated he received a message after 7:30 P.M. on January 15, 1968, to be on watch for a dark-colored Thunderbird, that the driver was intoxicated, and that a gun had been seen in this car. Prior to the time he stopped defendant's automobile he went to Dana, Iowa, talked with Mr. Goodell, and, not finding the car in Dana, he radioed highway patrol cars in the vicinity for aid in locating it. The marshal at Grand Junction reported the vehicle was traveling east on Highway 30 near the junction of Highways 30 and 169. Officers Bolz and Beaman intercepted the vehicle shortly thereafter.

Orville Beaman, also a highway patrolman, testified that at approximately 9:30 P.M. he and Kenneth Bolz stopped this dark-colored Thunderbird and observed the defendant, then a passenger in the automobile. As he approached the defendant's car from the driver's side, Officer Bolz approached from the passenger side of the car. He asked the driver and the defendant to step out of the car. They were then frisked for weapons. Finding none, Bolz asked the defendant where the gun was and he said "There's no gun" and to "go ahead and search the car." The defendant did not dispute this statement.

Both patrolmen testified that defendant was intoxicated. Officer Beaman placed defendant under arrest for intoxication. The car was searched by Officer Bolz, who found the loaded stub-nosed .38 caliber revolver under the left rear floor mat of the car. The defendant was subsequently charged with carrying a concealed weapon in violation of section 695.2 of the Code.

In his appeal appellant assigns three errors relied upon for reversal. He maintains the trial court committed reversible error (1) in admitting evidence relating to the gun, because the search and seizure was not by consent or as incident to a lawful arrest but was the product of an illegal search and seizure, (2) in refusing to exclude or strike testimony that was highly prejudicial, because it was not based upon proper foundation and was therefore incompetent, irrelevant, and immaterial, all of which deprived him of a fair trial, and (3) in failing to direct a verdict, because all the essential elements of the crime were not proven.

It is the State's position that the search for and seizure of the gun from defendant's automobile were made pursuant to consent voluntarily given, that the officers also made the search of this automobile on probable cause, and that under these circumstances no search warrant was required.

I. There are two principal categories of searches, i. e., those made under a search warrant, and those made without a search warrant. Generally, searches made without a warrant must be made by voluntary consent or as incident to a lawful arrest. State v. Brant, Iowa, 150 N.W.2d 621, 624, and citations; State v. Moore, Iowa, 156 N.W. 2d 890, 893. The search here was without a warrant. Was it made pursuant to a voluntary consent? Was it made as incident to a lawful arrest? Was it made pursuant to probable cause and was it reasonable? We shall consider these questions, but not necessarily in that order.

■ II. It has long been recognized that a valid search of a vehicle moving on a public highway may be had without a warrant or consent and prior to arrest where the seizing officer has probable cause to believe the contents of the vehicle may offend the law. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; State v. Rye, 260 Iowa 146, 148 N.W.2d 632. See also United States v. Bonanno, D.C., 180 F. Supp. 71, 79-80; Carlson, The Law of Arrest, Search and Seizure in Iowa, p. 34; 49 Iowa L.Rev. 574.

The above rule, often referred to as the "Carroll rule", allows search to be made of a mobile vehicle on probable cause alone. This stands as a recognized exception to the rule that warrantless searches should only be made incident to a lawful arrest or with the suspect's consent. Both the Carroll and Brinegar cases involved illegal transportation of liquor, the first during the prohibition era, the second after repeal. They recognize the officers do not have an absolute right to stop automobiles for investigation on mere whim or suspicion. Each case, under the facts and circumstances reviewed, found that the officers had probable cause to stop the involved vehicle.

In Carroll, it is stated:

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. * * * the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a war-

rant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. * * The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for the belief that the contents of the automobile offend against the law." Carroll v. United States, supra, 267 U.S. 132, 149, 153, 158–159, 45 S.Ct. 280, 283, 285, 287, 69 L.Ed. 543, 549, 551, 554. To the same effect, also see Dyke v. Taylor Imp. Mfg. Co., 391 U.S. 216, 221, 88 S.Ct. 1472, 1475, and Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (June 23, 1969).

In the Brinegar case, in discussing the question of probable cause for warrantless searches in this area, the court said:

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion, 267 U.S. at page 161, 45 S.Ct. at page 288, 69 L.Ed. 543, 39 A.L.R. 790. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348, 3 L.Ed. 364. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790." Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890.

Although the area of search without a warrant has been narrowed by recent United States Supreme Court cases, we have found none that disturb the precedent set by the above cases.

In State v. Rye, supra, we recognized the rule announced in Carroll and applied it to the suspect's car, which upon probable cause was thought to contain stolen merchandise. Therein the police were aware that a suit had been stolen from a men's store. The suspects were described as two women, one wearing a blond wig, who were reported to have gotten into a car driven by an unidentified third person. The license number as well as the type of car were known to the officers. Upon spotting the automobile and the three suspects in it the car was stopped, and found therein were a woman's blond wig and certain stolen merchandise. Although not directly dealing with the problem of search and seizure, it was held at page 150 of 260 Iowa, and page 635 of 148 N.W.2d: "Under the circumstances shown here we hold that the actions of the officers in stopping the car in which defendant was riding were taken on probable cause, and the subsequent formal arrest after seeing the clothing in the automobile met the statutory requirement * * *."

■ In the case at bar it is clear that police officers were in possession of the knowledge that the suspect was intoxicated, was in possession of a pistol, and was operating his dark-colored Thunderbird automobile in this general vicinity.

It must, therefore, be concluded that the police officers had probable cause to believe the contents of the car were offensive to the law and that the search for and seizure of the pistol were valid and the evidence pertaining thereto admissible.

III. A search to which defendant consented would not violate his rights under Amendment 4 of the United States Constitution. State v. Polton, 259 Iowa 435, 443, 143 N.W.2d 307, 311; State v. Post, 255 Iowa 573, 582, 123 N.W.2d 11, 16, and citations. Evidence obtained when consent has been voluntarily given would be admissible in a prosecution such as we now consider.

■ Although the burden of demonstrating that evidence has been illegally procured normally devolves upon the accused in a motion to suppress such evidence, where the State relies upon consent to an otherwise illegal search and seizure, it has the burden of proving by clear and convincing evidence that the consent was free from duress and coercion. State v. Gates, Iowa, 150 N.W.2d 617, 619; State v. Shephard, 255 Iowa 1218, 1222, 124 N.W.2d 712, 714, 715, and citations.

Whether consent has been given freely and intelligently in a particular case is a factual matter to be determined in the first instance by the trial court, and when the evidence is factually in conflict, the appellate court will accept the finding below if it is supported by substantial evidence. State v. Gates, supra; State v. Brant, supra, Iowa, 150 N.W.2d 621; State v. Shephard, supra; Ker v. State of California, 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726, 738; People v. Peterson, 17 Ill.2d 513, 162 N.E.2d 380, 381.

Thus, the question of whether the consent was freely and voluntarily given is one of fact to be decided upon its own circumstances. State v. Moore, Iowa, 156 N.W.2d 890, 893; State v. Shephard, supra; State v. Collins, Iowa, 152 N.W.2d 612, 615; Rule 344(f) (1), R.C.P.

■ In the case before us the testimony of the officers that defendant invited them to search the car for a gun is undenied. Appellant now contends the consent was not voluntarily given because he was so intoxicated he could not freely and intelligently give a consent, and because of duress. We find no merit in either contention. This, of course, is an affirmative defense, with the burden resting on him to prove it by a preponderance of the evidence. State v. Estrella, 257 Iowa 462, 470, 133 N.W.2d 97, 102, and citations. Also see State v. Church, and citations, filed July 24, 1969. There is no evidence which would indicate defendant was so intoxicated that he did not realize or comprehend the meaning of his invitation to search for a gun. The evidence is clear and convincing that he was asked to step out of the car, that he did so and willingly submitted to a search of his person, that he was asked where the gun was and denied there was a gun. Clearly he knew the officers were looking for the gun he was carrying in the car, and believed it was hidden sufficiently so they would not find it. This is not a case where the owner or operator of a vehicle was so intoxicated he did not know or understand the purpose of the search. We are satisfied this was shown to be a knowledgeable consent at the time it was made. At least, the evidence does not indicate such a state of intoxication as would negate defendant's ability to consent to the search and we cannot say as a matter of law that it did negate his consent. As bearing thereon, also see State v. Wharff, 257 Iowa 871, 876, 134 N.W.2d 922, 925, and citations; State v. Gillespie, Iowa, 163 N.W.2d 922, 926; and State v. Hunley, Iowa, 167 N.W.2d 645, 649.

As to the contention of duress, we find even less evidence to sustain appellant. The only evidence of any duress is the testimony of Beaman that, when defendant's car was stopped, Officer Bolz approached it with his gun drawn. It appears such action by officers who have been warned of an armed suspect is not only proper police procedure for their own safety, but was a wise precaution under these circumstances. There was no other evidence of the use of the gun and nothing to indicate any threat or intimidation by the officers to obtain the consent to search. From a careful reading of this record we are satisfied the State met its burden to show by clear and satisfactory evidence that the consent was freely and intelligently given, and that the court properly overruled defendant's motion to suppress and admitted the evidence obtained by the search in this case.

We may also note that in crimes of this nature voluntary intoxication in no way negates an otherwise voluntary consent to a search. See United States v. Hickey, D.C., 247 F.Supp. 621, 623. Also as bearing on this issue, see People v. Garcia, 227 Cal.App.2d 345, 38 Cal.Rptr. 670, 673, and citations, and City of Sioux Falls v. Ugland, 79 S.D. 134, 109 N.W.2d 144, 145. There is no contention herein that defendant's intoxication was not voluntary.

■ IV. When a lawful arrest is made of one operating a motor vehicle on the highway, the officers making the arrest have the right, without a search warrant, to make a contemporaneous search of the person and his vehicle for weapons or for the fruits of the crime. State v. Raymond, 258 Iowa 1339, 1346, 142 N.W.2d 444, 447; State v. Dwinells, 259 Iowa 945, 949, 146 N.W.2d 231, 234.

The issue here presented, then, is whether at the moment of the arrest the officers had probable cause to make it, whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing the suspect was guilty of a crime. State v. Raymond, supra, and citations.

As we have already pointed out, these officers had such knowledge and were looking for defendant at the time of his apprehension. They had been reliably informed defendant was operating his vehicle, was intoxicated, and was in possession of a gun. This was sufficient probable cause to justify the actions of the officers in stopping defendant's automobile, arresting him when he appeared to be intoxicated, and in searching the automobile. There was no evidence to rebut this showing and we are satisfied it was sufficient to justify the search as reasonable.

■ V. Appellant argues that a part of Officer Beaman's testimony, admitted over timely objection, was highly prejudicial and its admission constituted reversible error. We cannot agree. To the question, "Did you, yourself, look in the car in an attempt to find a gun?", Officer Beaman stated, "No, sir, I did see a gun on this particular evening which Officer Bolz had at the time." Appellant argues that the answer was incompetent, irrelevant and immaterial, as all patrolmen carry guns and Officer Beaman did not identify the gun in Officer Bolz' possession as that of the defendant. Testimony that Beaman saw Bolz with a gun after the car was searched by him is relevant and material as to the fact that a gun was found concealed in defendant's car. It appears from the record that this gun in Bolz' possession was that found in defendant's car and not the one he carried as an officer. Had appellant wished clarification or a greater degree of certainty as to the identification of the gun in Bolz' possession, he had ample opportunity to do so on his cross-examination of the witness. This he failed to do, and his belated claim in this regard cannot be given serious consideration. In any event, this testimony only corroborated the testimony of Officer Bolz.

In the light of our holding that this search and seizure was not invalid, evidence as to the fruits of the search was not subject to defendant's objections thereto and there was no error in the court's rulings as to the admissibility of that evidence.

■ VI. Appellant next contends that the State failed to prove all the essential elements of the crime. Although it is true that a lack of evidence of any of the essential elements prevents a guilty verdict (State v. Myers, 253 Iowa, 271, 274, 111 N.W.2d 660, 662), we find no lack of such evidence here. He argues that the essential element of intent was not proven because his intoxicated state prevented him from having the capacity to commit the crime of carrying a concealed weapon. The rule in Iowa is well settled. Voluntary intoxication is no defense for a crime

unless a specific intent is an essential element of the offense charged, and not then unless the accused was so drunk as to be incapable of entertaining the requisite specific intent. State v. Fox, 248 Iowa 1394, 1399, 85 N.W.2d 608, 611; State v. Johnson, 215 Iowa 483, 488, 245 N.W.2d 728, 731, and citations; State v. Wharff, supra, 257 Iowa 871, 876, 134 N.W.2d 922, 925. See also State v. Hunley, supra, Iowa, 167 N.W.2d 645, 649, and annotation, 8 A.L.R.3d 1236.

Section 695.2, Code of 1966, provides in part: " * * * No person shall carry a pistol or revolver concealed or about his person or whether concealed or otherwise in any vehicle operated by him, except * * *, without a permit therefor as herein provided." Specific intent is not made an essential element of the crime of carrying a concealed weapon. The crime charged is one of general intent, and such intent is presumed from the doing of the prohibited acts, without more. State v. Fox, supra; State v. Wharff, supra; annotation 8 A.L.R.3d, supra; 22 C.J.S. Criminal Law § 66. Hence, the voluntary intoxication of the appellant or the depth thereof would not serve as a defense to this charge. State v. Fox, supra.

■ Appellant further maintains that another essential element of the crime, operation of a motor vehicle by the person charged, was not proven. We cannot agree. It is true that at the time appellant's car was stopped he was not driving it, but appellant overlooks the testimony of Mr. Juhl, who said that he saw defendant sometime earlier get in this car in Dana, Greene County, Iowa, and drive it away. In any event, we have held that operating a car, within the meaning of section 695.2, is not limited to actual driving of the car. State v. Thomason, 224 Iowa 499, 276 N.W. 619. The reasonable inferences here under the circumstances were sufficient to sustain a finding that defendant was operating his automobile. He was shown to be the owner of both the automobile and the gun and sat beside his driver. Under these facts and circumstances we are satisfied this statutory requirement was fully met.

■ VII. Finally, in his motion for directed verdict made at the conclusion of all testimony, defendant maintained there was no evidence produced to show he did not have a permit to carry a concealed weapon from the sheriff of the county where he resides, and that the testimony of the sheriff of Greene County, where he was apprehended, was not sufficient to sustain the State's case. We do not agree.

Section 695.17 of the Code provides: "In all prosecutions on the charge of carrying a concealed weapon without a permit, proof that no permit had been issued to the defendant in the county in which the offense was alleged to have been committed shall be prima facie evidence that the defendant had no permit to carry a concealed weapon."

We have said this places the duty upon the defendant to rebut the State's evidence that he had no permit from proper authorities, which initially would be in the county where he was carrying the concealed weapon. Fisher v. Tullar, 209 Iowa 35, 38, 227 N.W. 580, 581. In interpreting this section, the court said the clear implication of this statute is that a person charged may properly operate his vehicle with a concealed weapon under a permit from any county, but in the event he relies on that authority he has the duty to show it. In other words, such showing would rebut the evidence of no permit in the county where he is charged. To interpret it otherwise would be unreasonable. It reasoned: "If, however, the State, in order to support the prosecution, was required to negative the issuance in every one of 99 counties, it would come under a very heavy burden of mere formal proof." Of course, the State could limit the permit to the county where issued, and this method of refuting the State's showing of no permit does not, in

our opinion, shift the burden of proving innocence to the party charged. Thus, the unrefuted evidence that defendant had no valid permit to carry this concealed weapon at that time and place was sufficient proof of that element of the crime charged.

We conclude, therefore, that no constitutional violation of due process is presented and that section 695.17 of the Code does not change the State's burden to prove its criminal charge beyond reasonable doubt.

Having carefully reviewed both the record and the transcript filed herein, we are satisfied that there were no reversible errors, that defendant had a fair trial, and that the case must be affirmed.

Affirmed.

All Justices concur.