# IN THE COURT OF APPEALS OF IOWA

No. 23-0821
Filed January 9, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TYLER EAGLE FREEMONT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.

        A criminal defendant appeals his convictions for attempted murder, willful

injury causing serious injury, and going armed with intent.  **CONVICTIONS**

**AFFIRMED IN PART AND REVERSED IN PART; SENTENCE VACATED IN**

**PART AND REMANDED.**

        Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant

Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Richard J. Bennett, Special Counsel,

for appellee.

        Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**TABOR, Chief Judge.**

Following his jury trial, Tyler Freemont appeals his convictions for attempted murder, willful injury causing serious injury, and going armed with intent. He challenges the district court's ruling that a police officer could recount the victim's statements—made several hours after the shooting while he was being treated at the hospital—under the excited-utterance exception to the hearsay rule. *See* Iowa R. Evid. 5.803(2). Freemont also challenges the sufficiency of the evidence of the going-armed-with-intent conviction, arguing that the State failed to prove he went anywhere with the intent to use his weapon. *See* Iowa Code § 708.8 (2023).

After reviewing the record, we find the State did not present "proof of movement" necessary to convict Freemont for going armed with intent. So we reverse that conviction and remand for the district court to vacate that part of his sentence. But we affirm his attempted-murder and willful-injury convictions because admission of the hearsay statements, even if erroneous, was harmless.

I.      **Facts and Prior Proceedings**

In late October 2022, Gabriel Johnson and his girlfriend Heather Graham were crashing on a friend's couch at an apartment complex described as "a common drug hangout." In the night, Graham woke to the sound of a gunshot and Johnson yelling from outside the apartment. She opened the door and found Johnson in the vestibule "with his leg dragging next to him." Graham called 911 to report Johnson saying: "Giant shot me." In the courtroom, Graham identified Freemont as "Giant."

Johnson testified that he woke to the sound of people talking in the vestibule of the apartment building.[1] He saw two people standing in the vestibule: his friend, Josh, and Freemont—whom he also knew but only by the name "Giant." Johnson asked for a cigarette and started "shooting the shit" with them. Johnson recalled that Freemont was not "making a lot of sense" and was "really animated" or "amped up." Freemont was "trying to crawl up the stairs" then came back down. And he was saying, "Stop. Be quiet. Listen to this." Johnson thought Freemont was just "really high" and didn't pay him much attention.

Neither Josh nor Freemont had a spare cigarette. But Johnson remembered he had some marijuana in his bag, so he ducked back inside the apartment and returned with "loose wet weed" in a baggie. While Johnson was gone, Freemont had pulled out a pistol. Johnson offered to sell the marijuana, but neither Josh nor Freemont bit. The next thing Johnson remembered was Freemont pushing the gun to his head. Freemont pulled the trigger, but the gun "jammed." Johnson joked, "You would have been doing me a favor, you know." Freemont then "reracked" the gun, pressed it against Johnson's inner thigh, and pulled the trigger again. This time the gun fired, shooting into Johnson's leg. Johnson said he "screamed like a little bitch" while Freemont ran from the apartment building.

After Graham called 911 and medics took Johnson to the hospital, officers spotted a possible suspect at the nearby QuikTrip gas station. They drove Graham

---

[1] Johnson was considered unavailable to testify before the jury—the State could not locate him. By agreement of the parties, Johnson's deposition was read into evidence at Freemont's trial.

over, and she identified the person as Giant. Law enforcement collected several live and spent 9mm bullets in and around the vestibule. At the QuikTrip, Freemont had taken off his sweatshirt and discarded it on the ground. Near that shirt, officers found another live bullet. And officers found a gun in a bucket of windshield washer fluid near where officers briefly lost sight of Freemont.

When asked about their relationship, Johnson recounted knowing Freemont for a year or more and that he had "seen him around a lot of different hangout spots" in Des Moines. He knew Freemont commonly carried a gun but did not worry about it. Freemont had "never been . . . violent or hostile towards" Johnson. Johnson testified, "I thought we were friends. I thought we were cool and stuff. . . . I was very confused when everything happened the way it happened." Graham also testified that Freemont was always friendly with her.

Heading up the shooting investigation was Des Moines Police Detective Jeffrey Davis. Several hours after the shooting, Davis went to the emergency room to interview Johnson. At trial, when the State asked Davis to recount what Johnson said, the court allowed the statements as excited utterances over a defense hearsay objection.

A jury convicted Freemont of attempted murder, a class "B" felony in violation of Iowa Code section 707.11(1); willful injury causing serious injury, a class "C" felony in violation of section 708.4(1); and going armed with intent, a class "D" felony in violation of section 708.8.[2] The court sentenced him to a term of incarceration not to exceed twenty-five years for attempted murder with a

---

[2] The State dismissed a fourth count, assault while participating in a felony.

mandatory minimum of seventeen and one-half years. For willful injury, the sentence was a ten-year indeterminate term; and for going armed, the court imposed a five-year indeterminate term. The court ran the sentences concurrently. The court also imposed and suspended fines on the second and third convictions, among other conditions. Freemont appeals.

## II. Standard of Review

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). We also review hearsay challenges to correct errors at law. *State v. Skahill*, 966 N.W.2d 1, 8 (Iowa 2021).

## III. Discussion

### A. Substantial Evidence of Going Armed With Intent

We first address Freemont's claim that the State presented insufficient evidence to convict him of going armed with intent under section 708.8.[3] That class "D" felony required the State to prove these elements:

> 1. . . . Tyler Freemont was armed with a firearm.
> 2. A firearm is a dangerous weapon . . . .
> 3. Tyler Freemont was armed with the specific intent to use the firearm against another person.
> 4. While armed with the firearm, Tyler Freemont moved from one place to another.

---

[3] We are bound by the jury's verdict if it is supported by substantial evidence. *State v. Slaughter*, 3 N.W.3d 540, 546 (Iowa 2024). Substantial evidence exists if the record "would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022) (citation omitted). When the evidence raises only "suspicion, speculation, or conjecture," it is insufficient. *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992). "We consider all evidence, not just the evidence supporting the conviction, and view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (citation omitted). For sufficiency purposes, we consider all evidence presented at trial even if wrongly admitted. *State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003).

The court also instructed the jury that "armed" means "a conscious and deliberate possession of a firearm on or about one's person so it is available for immediate use."

Freemont challenges the State's proof that he moved from place to place while armed with the intent to use the weapon against Johnson. That challenge encompasses three elements which must exist simultaneously: (1) being armed, (2) having the intent to use the weapon against another person, and (3) movement. Freemont does not dispute that he was armed. But he contests the State's evidence of his intent and his movement.

First, intent. As in many cases where a person's state of mind is not evident from direct evidence, we must rely on circumstantial evidence and the reasonable inferences drawn from it to determine Freemont's intent. *See, e.g.*, *Slaughter*, 3 N.W.3d at 549. Johnson testified he knew Freemont carried a gun but was not concerned about him being armed because they had no "beef" between them.

The State criticizes Freemont's focus on the lack of any "beef" because going armed does not require an "intent to shoot some particular person or class of persons." *State v. Buchanan*, 207 N.W.2d 784, 786 (Iowa 1973). As proof of Freemont's intent to use the weapon, the State points to Freemont's act of shooting Johnson in the leg. But Freemont's point is that to prove he was going armed, the State had to show that his intent "to use the gun on someone" existed before the shooting. *See id.* Yet the State presented no evidence that Freemont traveled to the apartment building with that intent. Indeed, Johnson testified that Freemont commonly carried a gun. But the evidence presented at trial does not reveal any reason why Freemont would want to shoot Johnson—or anyone else—until he did.

While in the vestibule, Freemont was acting "really high," according to Johnson, but was not aggressive or confrontational.

Without evidence of Freemont's intent before the shooting, the State urges us to infer his criminal state of mind from his use of a dangerous weapon. *See State v. Green*, 896 N.W.2d 770, 780 (Iowa 2017). In *Green*, the supreme court found the jury could infer malice aforethought from Green's use of a dangerous weapon to commit a murder—a baseball bat used to strangle the victim. *Id.* at 780–81 (defining malice aforethought as "a state of mind prompting the person to take the life of another intentionally, without legal justification or excuse"). But malice aforethought differs from the intent in section 708.8. *See State v. Slayton*, 417 N.W.2d 432, 434 (Iowa 1987) (explaining that "intent to use" a firearm means "intent to shoot another person"). That intent to shoot another person must coincide with the movement. In other words, the State needed to show that Freemont went[4] somewhere with that intent.

Which brings us to Freemont's second complaint: insufficient proof of movement. Thirty years ago, the supreme court said that going armed "necessarily implicates proof of movement." *State v. Ray*, 516 N.W.2d 863, 865 (Iowa 1994). True, the accused need not travel a long distance to meet the "going" element. *See, e.g.*, State v. *Harris*, 891 N.W.2d 182, 187 (Iowa 2017) (finding sufficient movement when Harris left the inside of bar and waited for victim while leaning against the wall outside); *State v. Pearson*, 804 N.W.2d 260, 265 n.1 (Iowa 2011)

---

[4] "Went" is the "past tense of GO." *Went*, Merriam-Webster, https://perma.cc/VHV5-SPFT. Go means "to move on a course," "to travel to a place," or "to travel to and stay in a place for a period of time." *Go*, Merriam-Webster, https://perma.cc/7RLC-RGRT.

(finding movement across kitchen sufficient); *Ray*, 516 N.W.2d at 865 (finding movement from house to front yard sufficient). But Freemont contends there is no evidence he moved, even across the vestibule, with the intent to use the weapon against a person.[5]

The State "recognizes there is no direct evidence regarding any significant movements of [Freemont] before he shot the victim in the vestibule." But it argues that "the jury could find [Freemont] came to the apartment complex armed with his pistol." True, the jury could reasonably infer that Freemont moved with the gun because he was known to carry it, held it in the vestibule, and did not live in that building. But the statute explicitly prohibits the jury from inferring the required intent from the act of carrying the weapon. *See* Iowa Code § 708.8 ("The intent required for a violation of this section shall not be inferred from the mere carrying or concealment of any dangerous weapon itself, including the carrying of a loaded firearm, whether in a vehicle or on or about a person's body."). So the supposition that he went to the apartment building with the gun does not prove that he armed himself and traveled there with the specific intent to use it against a person. *Cf. State v. Chew*, No. 17-1692, 2018 WL 5850225, at *6 (Iowa Ct. App. Nov. 7, 2018) (finding Chew went "beyond 'mere carrying'" when he taunted the victim the day before and showed up in the victim's neighborhood wearing body armor and carrying extra ammunition).[6] And because there was no "beef" between Freemont

---

[5] At trial, the State's closing argument provided this movement theory: "[H]e moved from place to place. Not only did he move into [the apartment building], he moved out with a dangerous weapon."

[6] In *State v. Gipson*, No. 17-1359, 2018 WL 3650337, at *2–3 (Iowa Ct. App. Aug 1, 2018), our court found the evidence was sufficient when the defendant, who habitually traveled with his gun in his car and had a long history of animosity with

and Johnson beforehand and no evidence of Freemont's conduct before arriving at the apartment building, the jury could not infer that he went there with the intent to use the gun against a person. Neither is there evidence that he developed the intent to use the gun against a person at any point during his journey there.

The State insists "evidence of [Freemont's] movement while armed was sufficient to establish his guilt" and cites two cases in support. But they do not hold that any movement with a weapon is enough. In *State v. Hunley*, 167 N.W.2d 645, 648–49 (Iowa 1969), a police officer stopped Hunley for operating while intoxicated and escorted him from the car. Hunley returned to his car and unsuccessfully tried to start it. *Hunley*, 167 N.W.2d at 648. The officer took Hunley from the car a second time and was walking him toward the police car when Hunley slashed at him with a knife. *Id.* The supreme court concluded the evidence was sufficient to show Hunley had the requisite intent for going armed, despite his intoxication. *Id.* That case did not specifically discuss movement, but Hunley was walking between the cars when he used the knife and had resisted the officer's attempt to arrest him, allowing an inference that he developed the intent before or during the walk. And in *In re I.M.*, No. 17-1027, 2018 WL 2084838, at *3 (Iowa Ct. App. May 2, 2018), a panel of our court found that I.M. committed the delinquent act of going armed with intent from evidence that he was standing on the sidewalk outside his grandmother's house and shot his uncle with a revolver. *I.M.*, 2018 WL 2084838, at *3. The court deduced that I.M. traveled to that location with the weapon

_____

his ex-girlfriend, argued with her in public and watched her walk to a bar, then went to get his gun from his car and shot into the bar. Our court found he demonstrated his intent to use the gun against another person. *Gipson*, 2018 WL 3650337, at *2–3. But Gipson did not contest the movement element. *Id.*

because he was returning to the home where he had argued with his uncle, and there was no evidence that he acquired the gun once he got there. *Id.* So there was sufficient evidence to infer "I.M. engaged in movement while armed with the gun, with the intent to use the gun against" the victim. *Id.*

Next, the State suggests that Freemont revealed his intent when he ran away. But at that point, he no longer intended to use the gun against anyone. Rather, he dumped the gun in the bucket of windshield washer fluid at the nearby QuikTrip. A reasonable jury could not infer that he intended to use the gun against a person after he fled the vestibule. And we have found no case where the act of fleeing after use of the weapon satisfies the movement element of going armed.

Because evidence of Freemont's movements before and after the shooting do not meet the State's burden, we are left with the time of the shooting. When Freemont shot Johnson, they were standing together in the vestibule. Freemont tried to shoot Johnson in the head, but the gun jammed. Then, he shot Johnson's leg. The State offered no evidence that he moved any distance between those actions. So these circumstances differ from those cases cited by the State where minimal movement was sufficient. *See, e.g.*, *Harris*, 891 N.W.2d at 187; *Pearson*, 804 N.W.2d at 265 n.1; *Ray*, 516 N.W.2d at 865. Some movement is required. *See State v. Taylor*, 596 N.W.2d 55, 57 (Iowa 1999). Because the State did not offer evidence from which a reasonable jury could infer Freemont went armed with

the intent to shoot his gun at another person, the verdict is not supported by substantial evidence.[7]  Thus, we reverse his conviction for going armed.

### B.  Evidentiary Objection

Freemont next contends that the district court erred in allowing the State to ask Detective Davis about Johnson's statements at the hospital over Freemont's hearsay objection.  Davis testified that when he went to the hospital, Johnson was "wincing in pain, emotional, very upset, and seemed like he was in a lot of pain." He recounted that Johnson said he was at the apartment with his girlfriend, tried to sell marijuana to a person he identified as Giant, and that "for no apparent reason, Giant pulled a gun" and shot him in the leg.

The court allowed the testimony under the excited-utterance exception to hearsay.  Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  *See* Iowa R. Evid. 5.801(c).  Excited utterances are statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Iowa R. Evid. 5.803(2).  Freemont disputes that Johnson was still under the stress of the startling event by the time he was in the emergency room for three reasons: first, because it was not made in "substantial contemporaneity" with the shooting.  *State v. Flesher*, 286 N.W.2d 215, 217 (Iowa 1979).  Second, because Johnson was no longer under the excitement of the event given his stable condition in the emergency room.  And

---

[7] The State also cites *State v. Alexander*, 322 N.W.2d 71, 72 (Iowa 1982), which references "going armed in a city," previously section 724.4 (1974).  But that offense did not have the same intent element as going armed under section 708.8.

finally, because the remarks were not spontaneous but in response to Davis's questions.

The State defends admission of those statements but also argues any error in their admission was harmless. *See State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008). We agree with the harmless-error argument. Even if wrongly admitted, we will not consider hearsay prejudicial if substantially the same evidence is properly in the record. *See State v. Juste*, 939 N.W.2d 664, 675 (Iowa Ct. App. 2019). The parties agreed to the admission of Johnson's entire deposition, and his out-of-court statements admitted through Davis did not differ from that testimony. So we find the admission harmless.[8]

To recap, we affirm Freemont's attempted-murder and willful-injury convictions. But we reverse his conviction for going armed with intent and vacate that portion of Freemont's sentence. *See State v. Vandermark*, 965 N.W.2d 888, 895 (Iowa 2021) (noting that when a defendant is sentenced for multiple offenses, the appellate court may vacate one portion of the sentence and leave the remaining sentence undisturbed).

**CONVICTIONS AFFIRMED IN PART AND REVERSED IN PART; SENTENCE VACATED IN PART AND REMANDED.**

---

[8] We reject Freemont's contention that admission of the hearsay was prejudicial because it improperly bolstered Johnson's credibility. Unlike *State v. Skahill*, 966 N.W.2d 1, 16 (Iowa 2021), the State's case against Freemont did not rise and fall on the credibility of the victim's out-of-court statements.